Thomas Russell Jones, J.
In this proceeding Marianne De Pasquale, an 85-year-old victim of a paralyzing stroke, invoking CPLR article 78, seeks to annul the decisions of the New York State and City Departments of Social Services, dated March 11, 1975 and September, 1974, respectively, which denied her the home health care services of a home aid because her daughter, Catherine De Pasquale served her in that capacity.
The petitioner claims that:
(1) Respondents have erroneously interpreted subdivision 2 of section 365-a of the Social Services Law of New York State, to deny petitioner the services of a home health aid in the person of her daughter, Catherine, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and that,
(2) Section 365 (subd 2, par [d]) of the Social Services Law, effective June 11, 1973, as construed by respondents, is contrary to the Federal Social Security Act, pursuant to which it was enacted, and, as such, is therefore null and void under the Supremacy Clause of the United States Constitution (art VI, cl 2), and that,
(3) Home health aid care payments to petitioner’s daughter were terminated without adequate notice, in violation of due process of law standards.
The facts in this case are not in dispute. Marianne De Pasquale is an old Italian lady of 85 years, who became paralyzed by stroke and crippling arthritis. Mrs. De Pasquale was physically helpless. Although she speaks no English, she *733 is mentally competent. Her life depended on constant treatment in a hospital or nursing home, or upon round-the-clock attention by a qualified person in her own home. Mrs. De Pasquale’s physician recommended, and the New York City Department of Social Services found, that she could be nursed by her daughter, Catherine, as a home health aid, in her own home. The petitioner was entitled to such home nursing services as a recipient of Federal Supplemental Security income payments (US Code, tit 42, § 1381 et seq.). Beginning in March, 1970, and for four years thereafter, the New York City Department of Social Services authorized Catherine to attend petitioner as a home health aid, and paid her $70 per week for home nursing services. Catherine De Pasquale gave up her job as a dress operator to care for her mother on a full-time basis. She has had no other means of income for four years. Because of Catherine’s sacrifices, skill, and solicitude, the petitioner has survived.
In September, 1974, without prior notice, the New York City Department of Social Services suddenly terminated all home health services to petitioner, on the claim that such payments to Catherine were prohibited by the 1973 amendment to section 365-a (subd 2, par [d]) of the Social Services Law (L 1973, ch 595), because she was a member of petitioner’s family. The amendment, in relevant part, reads as follows: "(d) home health care services, including home nursing services and services of home aids and homemaker or housekeeping services in the recipient’s home, if rendered by an individual other than a member of the family who is qualiñed to provide such services, where the services are prescribed by a physician in accordance with a plan of treatment and are supervised by a registered nurse”. (Emphasis supplied.)
Prior to the 1973 amendment, subdivision 2 of section 365-a authorized payments for home aids, rendering home health care services, in the following language: "(d) home health care services, including home nursing services and services of home aids” (emphasis supplied).
Respondents interpret the phrase, "if rendered by an individual other than a member of the family who is qualified to provide such services” as a limitation on the "services of home aids AND homemaker or housekeeping services” rendered by members of the beneficiary’s family.
The petitioner contends that the limitations against compensation to family members for authorized home nursing *734 services relate only to "homemaker or housekeeping services”, which were added to the statute in order to increase the care available to the aged and infirm, with 50% reimbursement by the Federal Government therefor. Petitioner urges that the State Legislature did not intend to reduce existing benefits and authorization but to add new services, subject to family members’ limitations, to "maximize Federal reimbursement”.[1]
The court agrees. The universally stated purpose of the 1973 amendment was to include homemaker and housekeeping services in the definition of medical assistance and to tap Federal resources available to pay for these health services. The entire legislative history of the amendment focused on "homemaker and housekeeping services as an item of medical assistance when performed in the home by a person not a member of the family”.[2] Prior to 1973, homemaker and housekeeping services were available as social services, under the general public assistance provisions of section 131-a of the Social Services Law, and, as such, were not entitled to reimbursement by the Federal Government. The New York State Department of Social Services therefore recommended the amendment in its "Memorandum Accompanying Comments on Bills before the Governor for Executive Action”, dated May 23, 1975, to obtain 50% reimbursement from the Federal Government. The department’s budget report, dated February 21, 1973, declared that: "(h) homemaker and housekeeping services are currently funded under the recently imposed Federal ceiling on supportive social services. Should expenditures for these services exceed the Federal limit, the local social services district must either cut back services or finance the entire excess cost themselves. This bill would provide an *735 alternative unlimited funding mechanism for the localities with respect to homemaker and housekeeping services and would spread costs (over the Federal limit) among Federal, State and local governments.” (See p 1 of report, emphasis supplied.)
Interestingly enough, the respondents cite the case of Southhold Sav. Bank v Gilligan (76 Misc 2d 30, 32), for the proposition that a "statute may not be construed to create an absurd result and one the Legislature could not have intended”. Exactly! The respondents are seeking an absurd result in direct opposition to their previously stated purpose as sponsors of the 1973 legislation. If respondents’ interpretation of the amended statute is followed, the financial burdens of local government will be increased not reduced. The court notes that Catherine has since been compelled to become a welfare recipient at $177.70 per month, instead of a self-supporting, dignified home health aid to her mother. The record indicates that petitioner has been mistreated by the abrupt termination of her health aid payments and her daughter given short shrift by an impatient hearing officer at the fair hearing.[3] No home health aid has been provided for her by respondents since her daughter’s compensation was withdrawn, in spite of her critical needs and her legal right to such nursing services. By an appeal to inappropriate legal principles and free use of the frightful phrase, to wit, that the amendment was designed to "avoid possible collusiveness and fraud” the respondents avoid the purposes set forth in their own analysis of the proposed amendment. They place an unwarranted construction on the language of the statute. Prior to the amendment no one, including the respondents, informed the Legislature that there was a problem of "possible collusiveness and fraud” in regard to "home aids”. Respondents have thus created a straw horse out of sheer imagination in order to destroy it with the horrendous phrase "possible collusiveness and fraud”, contrary to the views which they expressed to the Legislature as sponsors of the 1973 amendment.
The court finds that the limitations written into the 1973 amendment must be read as conditions against family members servicing beneficiaries as "homemakers or housekeepers”; *736 that they do not apply to the pre-existing "home nursing services” provided by authorized home aids.
The petition is granted. Respondents shall restore petitioner to the home nursing services, and a home aid in the person of her daughter, Catherine, as of the date when these services were terminated.
The court finds that the petitioner was denied due process of law in that the respondents terminated the services of her home aid without notice. It is conceded that petitioner does not speak or understand English, and that the New York City Department of Social Services did not inform her in writing or otherwise that her daughter would be terminated as her home aid. In fact, the case aid admitted that the petitioner never understood what she was talking about and that Mrs. De Pasquale thought that the department was going to "take her daughter away”, nor did the department representatives attempt to communicate with this bedridden old lady who only spoke Italian. A sad example of man’s inhumanity to man! The respondents thereby arbitrarily deprived the petitioner of a right to which she was entitled by Federal and State law, not by grace, and this was accomplished without due process. The petitioner shall be reimbursed for the services rendered by her daughter, Catherine, from the date of termination for as long as such home aid services were rendered.
The court, having determined that the limitation in the 1973 amendment against family members does not apply to petitioner’s daughter’s service as an aid, has not reached the other constitutional questions presented.

. The Budget Report No. 84 of the Department of Social Services, dated February 21, 1973, recommended that amendment which would "include homemaker and housekeeping services * * * when such services are: a) Provided by a qualified member of the recipient’s family * * * and * * * 4 b) * * ’ provide an alternative unlimited funding mechanism for localities with respect to homemaker and housekeeping services and would spread costs, (over the Federal limit) among Federal, State and local governments”. (Emphasis added.)

. Cf. "Budget Report on 10 and 30 Day Bills” on Senate Bill No. 5969 (1973), dated May 24, 1973, which incorporates by reference Budget Report No. 84 (n 1); "To authorize the use of Medicaid funds for homemaker and housekeeping services under certain conditions, ” (emphasis added); cf. also letter of Herbert H. Smith, Executive Director of the County Officers Association of the State of New York, dated May 23, 1976, to Hon. Michael Whiteman, the Governor’s Counsel, which recommended the amendment "providing homemaking and housekeeping services as an item of medical assistance when performed in the home by a person not a member of the family”.

. Cf. Pages 16-23 of hearing transcription, January 13, 1975, in which Hearing Officer took over proceedings from petitioner’s daughter and foreclosed reasonable cross-examination by her legal representative.