**Ruth A. GRANATO, Individually, and on Behalf of All Other Persons Similarly Situated,[1] Plaintiff,**

v.

**Mary Jo BANE, as Commissioner of the New York State Department of Social Services; Donald W. Yager, Jr., as Acting Commissioner of the Cortland County Department of Social Services, and Cortland County, New York, Defendants.[2]**

No. 88–CV–1210.[3]

United States District Court, N.D. New York.

Jan. 7, 1994.

---

1. This is not a class action suit as no class has been certified.

2. This case was originally brought before Senior Judge Howard G. Munson. On March 19, 1992, the case was transferred to Judge Scullin.

3. When this action was commenced, Cesar Perales was the Commissioner of the New York State Department of Social Services and Mary Ann Discenza the Commissioner of the Cortland County Department of Social Services. The present parties have been substituted pursuant to Fed.R.Civ.P. 25(d)(1).

Legal Services of Cent. New York, Inc., Cortland, NY, for plaintiff; James T. Murphy, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., Syracuse, NY, for defendant New York State Dept. of Social Services; Joanne Hunt Piersma, of counsel.

Hickey Sheehan & Gates, P.C., Binghamton, NY, for defendant Cortland County; Gregory A. Gates, of counsel.

Meldrim & Mack, Cortland, NY, for defendant Yager; Thomas A. Meldrim, of counsel.

## MEMORANDUM–DECISION & ORDER

SCULLIN, District Judge.

Plaintiff, a Medicaid recipient, initiated this suit alleging, *inter alia*, violations of her due process rights and rights under certain Medicaid regulations. The matter is presently before the court on Defendants' motions for summary judgment and Plaintiff's cross-motion for partial summary judgment. The Court heard oral argument on November 13, 1992 in Syracuse, New York, and reserved decision on the motions. This constitutes the Order and Decision of the court.

## BACKGROUND

Plaintiff Ruth A. Granato ("Plaintiff") was seventy-eight years old and maintained her own residence in Cortland County, New York when she commenced this action. At that time, Plaintiff was a recipient of Supplementary Security Income ("SSI") and Medicaid benefits, and remained a recipient at all times relevant to this action.

From approximately August 4, 1988 until October 19, 1988, Plaintiff received home health/personal care services for eight hours per day, seven days per week. On October 19, 1988, Plaintiff was admitted to Cortland Memorial Hospital ("Hospital") for emergency treatment of a self-induced overdose of a prescribed medication. On October 22, 1988, Plaintiff's treating physician determined that Plaintiff was ready to be discharged from the Hospital and on October 24, 1988, Plaintiff requested that the Cortland County Department of Social Services ("County DSS") reinstate her home health/personal care services, as she desired to return home.

On November 4, 1988, Plaintiff received notice that the County DSS was discontinuing her home health care services effective October 28, 1988.[4] Plaintiff alleges that the County DSS made this decision without having obtained a second medical opinion and without adhering to established procedures.[5] The written notice received by Plaintiff advised her that the County DSS was discontinuing Plaintiff's services because, "[y]our safety is threatened if alone, impaired judgment."[6] The notice further advised Plaintiff that if she wished her services to continue unchanged (if she desired "aid continuing") pending a fair hearing decision, she had to request a fair hearing prior to the notice's effective date (October 28, 1988).[7]

On November 9, 1988, Plaintiff requested that the State Department of Social Services ("State DSS") provide an expedited fair hearing seeking administrative review of the County DSS's November 4, 1988 determination, and asked that her home health/personal care be reinstated (she requested "aid continuing") pending completion of the fair hearing process. The State DSS granted Plaintiff's expedited fair hearing request, but denied her request for "aid continuing."

When Plaintiff's counsel contacted the State DSS to inquire as to the reason for denial of the request for "aid continuing," the State DSS informed him that the denial was based upon its determination that Plaintiff's home health/personal care services terminat-

---

4. *See* Complaint, exh. "A" attached thereto.

5. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Memo."), Doc. 23 at 4.

6. *See id.*, exh. "A" at 2.

7. *Id.* This was a curious requirement, in light of the fact that Plaintiff did not receive the notice until November 4, 1988, seven days after the notice's effective date.

ed upon her admission to the hospital.[8] Therefore, according to the State DSS, Plaintiff's October 24, 1988 request for "reinstatement" of the home health/personal care services was in reality a *new* application for these services, and the County DSS was not obligated to grant Plaintiff's "aid continuing" request pursuant to the pertinent regulations.[9]

Plaintiff's counsel responded that since the County DSS had failed to provide Plaintiff with adequate or timely notice advising Plaintiff of its intent to terminate her aide service, it was improper to deem her request a "new application."[10] The State DSS answered by explaining that the State's policy was to

> deny aid-continuing status to any fair hearing request where there was an "intervening medical condition," that it was further the State's policy that an "intervening medical condition" eliminated the need to provide either adequate or timely notice; and that each request for continuation of a service after an "intervening medical condition" should be treated as a new application for service, irrespective of whether the "intervening medical condition" continued to impose further medical restrictions on the individual, or imposed any additional restrictions.[11]

Her request for reinstatement of home health care having been denied, Plaintiff continued to receive in-patient hospital services pending her fair hearing.[12] Consequently, Plaintiff claims that she was "forced to continue as a patient at Cortland Memorial Hospital [from October 22, 1988 until December 1, 1988], despite the fact that no medical or

psychological condition require[d] my hospitalization."[13]

On November 22, 1988, Plaintiff's fair hearing was held before State DSS Administrative Law Judge Carl E. Snitzer (the "ALJ"). The precise issue before the ALJ was the propriety of the County DSS's failure to provide home health/personal care services to Plaintiff in accordance with her physician's recommendation. On December 1, 1988, the ALJ issued his decision, reversing the County DSS's determination and directing that the County DSS reinstate Plaintiff's home health/personal care services.[14] The ALJ determined that the County DSS's failure to order the resumption of the home health care services in conformance with her doctor's recommendation could not be supported, as the County "failed to provide medical evidence to support its position [that Plaintiff would fare better in a different residential setting where she would not be left alone for substantial periods of time]."[15]

His conclusion notwithstanding, the ALJ concurred with the County DSS's position that Plaintiff's previously approved home health care services ended upon her admission to the Hospital on October 19, 1988, and therefore her October 24 request for these services constituted a new application.[16] The ALJ explained that, upon her admission to the Hospital,

> [t]he [Plaintiff]'s Personal Care Service Authorization ceased in its previous form [care in her home]. Upon her admission to the hospital, the [Plaintiff] became eligible for increased Medicaid coverage which included Personal Care Services, Nursing Services and Physician's Services. When her condition improved and it was deter-

8. *See* Plaintiff's Notice of Motion ("Plaintiff's Notice"), Doc. 22, Murphy Aff., exh. "D–3" at 5.

9. *See id.*

10. Plaintiff's Notice, Doc. 22, exh. "D" at ¶ 5.

11. *Id.* at ¶ 6.

12. Plaintiff alleges that the reason behind the County's discontinuance of Plaintiff's home health care services was its desire to force Plaintiff to accept placement in a proprietary home against her wishes. Plaintiff's Rule 10(j) Statement, Doc. 22 at ¶ 15. Defendants maintain that

the motivation behind its refusal to reinstate her home health care services was concern for her well-being in light of her suicide attempt. *See* County's Memo. of Law, Doc. 19 at 2.

13. Plaintiff's Notice, Doc. 22, exh. "B" at ¶ 10.

14. *See* Plaintiff's Notice of Cross Motion and Opposition to Defendants' Motions, exh. "A."

15. Plaintiff's Notice of Cross Motion, exh. "A" at 6.

16. *Id.* at 6–7.

mined that she could be discharged from the hospital it was necessary for the [County DSS] to make a new determination of eligibility for Personal Care Services. Such a determination would be either an acceptance or denial of Personal Care Services and is not within the definition of an "action" specified in 42 C.F.R. 431.201. Although the [County DSS] sent a discontinuance notice instead of a denial notice it did not prejudice the [Plaintiff]. Even if aid continuing benefits resulted from the use of the wrong notice, those benefits would be limited to a continuation of the Medicaid benefits currently being received by [Plaintiff] in the hospital.[17]

On November 16, 1988, while awaiting her fair hearing, Plaintiff initiated this lawsuit, alleging that Defendants have violated: (1) her due process rights; (2) her rights under certain Medicaid regulations, *to wit*, 42 C.F.R. §§ 431.211 and 431.231; (3) the Supremacy Clause, Article VI, Clause 2 of the U.S. Constitution;[18] and, by virtue of (1)–(3), (4) 42 U.S.C. § 1983. Plaintiff apparently seeks injunctive and declaratory relief against all Defendants, and compensatory damages against Defendant Cortland County ("County")[19].

Plaintiff's claims for declaratory and injunctive relief are essentially that the DSS Defendants' notices and notice procedures, whereby Plaintiff's home health care services were terminated without advance notice, should be declared violative of her right to due process and her federal rights under Medicaid, and that Defendants should be enjoined from employing such notices and procedures. Likewise, Plaintiff asks that Defendants' failure to reinstate her home health care services pending administrative appeal be declared violative of these rights and also enjoined. Lastly, Plaintiff seeks compensatory damages of $25,000.00 against the County, for the period of time Plaintiff alleges she was compelled to remain in Cortland Memo-

rial Hospital rather than return to her own home as she desired.

All Defendants move for summary judgment dismissing Plaintiff's complaint, upon the grounds that Plaintiff's claims for injunctive and declaratory relief are moot, and that the claim for compensatory damages is barred by the Eleventh Amendment. The County's motion is apparently also based upon its assertion that no independent basis for the County's liability exists as separate and distinct from that of the County DSS and thus, the County should be dropped as a defendant.

Plaintiff cross-moves for partial summary judgment, on her declaratory and injunctive claims, asserting that there are no questions of material fact concerning whether, under the applicable Medicaid regulations, Defendants were obligated to issue advance notice of the termination of Plaintiff's home health care services and to reinstate her home health care services pending Plaintiff's fair hearing.

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The entry of summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party has the initial burden of showing the absence of a genuine issue as to material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the

---

17. *Id.* at 7.

18. Although listed as a claim in Plaintiff's Complaint, nowhere in Plaintiff's motion papers is the Supremacy Clause ever mentioned; in fact, Plaintiff's arguments are limited to the alleged violations under the Medicaid regulations. Thus,

the court will likewise limit its discussion to these claims.

19. Although this is not clear from the Complaint, the court infers as much from the motion papers.

moving party has satisfied its initial burden, the non-movant must then set forth specific facts or evidence demonstrating that a genuine issue of material fact exists for trial. *Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 713 (2d Cir.1991) (citing *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 177–78 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Furthermore, a district court "must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party." *Gibson v. American Broadcasting Co.,* 892 F.2d 1128, 1132 (2d Cir.1989).

 The court must look to the substantive law to identify which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Regarding materiality, the Supreme Court has stated that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Thus, on their motions for summary judgment, Defendants bear the burden of demonstrating that there are no genuine issues of material fact concerning whether Defendants violated Plaintiff's rights as outlined above. Accordingly, in order to resolve the present motions, the court must first examine the relevant sections of the substantive law, i.e., the pertinent Medicaid regulations. While the parties frame their arguments principally around the mootness issue, the court must first determine whether Plaintiff states a cause of action under the applicable substantive law.

"Title XIX of the Social Security Act, 42 U.S.C. § 1396 [*et seq.*], authorizes each state to participate in a cooperative federal-state program for medical assistance to the needy, known as Medicaid, and to operate a medical assistance plan, subject to federal statutory and regulatory guidelines." *Caldwell v. Blum,* 621 F.2d 491, 494 (2d Cir.1980). While participation in the Medicaid program is optional, once a state elects to take part in the Medicaid program, it "must comply with certain requirements imposed by the Medicaid Act and regulations promulgated by the secretary of the United States Department of Health and Human Services." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990). New York has chosen to participate in the Medicaid program and to pay benefits to "medically needy" upon their meeting eligibility requirements. *Caldwell,* 621 F.2d at 494.

Medical assistance includes home health care services. 42 U.S.C.A. § 1396d(a)(7) (West 1992 & Supp.1993). Home health care services are services provided by a registered nurse or home health agency in the recipient's place of residence. 42 C.F.R. § 440.70(b) (1992). A recipient's place of residence for home health services does not include a hospital. 42 C.F.R. § 440.70(c) (1992).

The court notes that Plaintiff's claims are not entirely clear, but for purposes of this motion, the court infers that they are based principally upon her contentions that Defendants violated the pertinent Medicaid regulations in (1) failing to provide advance notice prior to terminating her home health care services and (2) refusing to reinstate her home health care services pending her fair hearing.[20]

The regulations pertinent to this case are: 42 C.F.R. §§ 431.211 ("Advance notice"); 431.213 ("Exceptions to advance notice"); and 431.231 ("Reinstatement of services"). 42 C.F.R. § 431.211 provides that:

---

**20.** On the one hand, Plaintiff appears to argue a violation based upon the County DSS's failure to issue advance notice prior to terminating Plaintiff's home health care services. *See* Complaint at ¶ 40. On the other hand, Plaintiff argues that because advance notice was not required under 42 C.F.R. § 431.231, the County DSS was required to reinstate Plaintiff's home health care services pending her fair hearing. *See* Plaintiff's Memo., Doc. 23 at 14.

The State or local agency must mail a notice at least 10 days before the date of action, except as permitted under §§ 431.-213 and 431.214 [21] of this subpart.

42 C.F.R. § 431.211 (1992). And, 42 C.F.R. § 431.213 provides in pertinent part:

The agency may mail a notice not later than the date of action if—

\* \* \* \* \* \*

(c) The recipient has been admitted to an institution where he is ineligible under the plan for further services;

\* \* \* \* \* \*

(f) A change in the level of medical care is prescribed by the recipient's physician.

42 C.F.R. § 431.213 (1992). Lastly, 42 C.F.R. § 431.231 provides:

(a) The agency may reinstate services if a recipient requests a hearing not more than 10 days after the date of action.

(b) The reinstated services must continue until a hearing decision unless, at the hearing, it is determined that the sole issue is one of Federal or State law or policy.

(c) The agency must reinstate and continue services until a decision is rendered after a hearing if—

(1) Action is taken without the advance notice required under § 431.211 or § 431.-214 of this subpart;

(2) The recipient requests a hearing within 10 days of the mailing of the notice of action; and

(3) The agency determines that the action resulted from other than the application of Federal or State law or policy.

(d) If a recipient's whereabouts are unknown, as indicated by the return of unforwardable agency mail directed to him, any discontinued services must be reinstated if his whereabouts become known during the time he is eligible for services.

42 C.F.R. § 431.231 (1992).

■ Plaintiff first argues that she was entitled to advance notice. She then argues "that in any situation in which 'advance' notice is not required pursuant to 42 C.F.R. § 431.231, the Medicaid agency *must* reinstate and continue services until a decision is rendered in a fair hearing, *if* the recipient requests a hearing within ten days of the Agency providing its notice under § 431.-213." [22] Plaintiff contends that since the County DSS did not issue advance notice of discontinuance of Plaintiff's home health care services, Plaintiff's situation comes under § 431.231(c)(1), and since she requested a fair hearing within the required time, the County DSS should have reinstated her home health care services.[23] While Plaintiff appears to argue both that she was wrongfully denied advance notice and that advance notice was not required, this issue is not dispositive. Thus, the court will assume that Plaintiff asserts violations based upon either of the above.

Assuming *arguendo*, then, that Plaintiff asserts a violation of § 431.211 because the County DSS failed to provide advance notice, while it is obvious that the County DSS failed to satisfy the "advance notice" requirement of § 431.211, the County DSS violated Plaintiff's rights under this regulation only if this act constituted an "action" as defined under the regulations. An agency "action" is defined as "termination, suspension, or reduction of Medicaid eligibility or covered services." 42 C.F.R. § 431.201 (1992). Plaintiff contends that the County DSS's "termination" of Plaintiff's home health care services on October 19, 1988 constituted an agency

---

**21.** There is no dispute that § 431.214 ("Notice in cases of probable fraud") is not relevant to this lawsuit.

**22.** Plaintiff's Memo., Doc. 23 at 11.

**23.** Plaintiff also argues that the circumstances of this case implicate both § 431.213(c) and (f), apparently as support for her contention that this was a situation that did not require advance notice, and as such, fits the definition of § 431.-

231(c)(1), i.e., "an action [which] is taken without the advance notice required under § 431.211 or § 431.214." Plaintiff seemingly misconstrues the language of § 431.231(c)(1), which is meant to protect recipients who have been *denied* advance notice to which they are entitled by requiring that their services be reinstated, to imply that the court should find that this protection also applies to situations in which advance notice *is not required*. This the court cannot do.

"action," [24] or, in the alternative, that its discontinuance of these same services on November 4, 1988 constituted an "action." [25]

Defendants counter that there was no agency "action" on October 19, 1988, as Plaintiff's home health care services ended automatically upon her admission to the Hospital, and that there was no "action" on November 4, 1988, as the "discontinuance" (which should have been a "denial") pertained only to Plaintiff's October 24, 1988 request for home health care services, which should properly be viewed as a new application for the services. Furthermore, Defendants allege that there was no "termination" of Plaintiff's services at any time; that the fact that Plaintiff may have been receiving "more care than she wanted does not trigger, under federal regulation, any right to continuation of a lower level of benefits, namely in-home personal care." [26]

■ The court notes initially that both common sense and logic dictate that "action" be read to denote only a *detrimental* change in a recipient's level of care; it is irrational to extend this to a situation which results in the recipient's receiving a *higher* level of care. This position is further supported by both the ALJ's decision [27] and by caselaw. *See Maher v. White*, Civ. No. 90–4674, 1992 WL 122912 (E.D.Pa. June 2, 1992).

In *Maher*, parents of children who were or would be in foster care brought an action against the Secretary of the Pennsylvania Department of Public Welfare ("DPW") over the DPW's failure to provide them with written notice regarding benefits (including Medicaid) provided to their children. In determining whether the parents were entitled to notice, the court had to first ascertain under what circumstances notice would be required. *See id.* at * 4. The court, interpreting the

definition of "action" under 42 C.F.R. § 431.-201, found that "notice is only required at the time of application and *negative changes* in benefits," *id.* (emphasis supplied), and that "[t]here is no requirement of notice when benefits are increased." *Id.*

■ The court cannot infer, as Plaintiff would have it do, that the use of the wrong notice, without more, converts an otherwise non-action into an "action," in the face of authority that holds to the contrary. The ALJ determined that Plaintiff's home health care services terminated automatically (not by agency "action") on October 19, 1988, and that the County DSS's use of the wrong *form* (discontinuance rather than denial) of notice did not alter this fact.[28] Even if the ALJ had not found this to be the case, neither the October 19, 1988 nor the November 4, 1988 event constitutes an agency "action" since neither resulted in a detrimental change in Plaintiff's services.

In arriving at this conclusion, the court finds a sharp contrast between the present case and cases in which courts found violations after agency "actions." *See, e.g., Catanzano v. Richardson*, Civ. No. 89–1127L (W.D.N.Y. October 17, 1989), *aff'd*, 902 F.2d 1556 (2d Cir.1990) (agency required to send advance notice to recipient prior to *reduction* in care); *DePasquale v. Dumpson*, 87 Misc.2d 731, 386 N.Y.S.2d 288 (Sup.Ct., Kings County 1976) (termination of home health services without prior notice which left recipient without any services violates due process).

■ Plaintiff nevertheless argues that here, as in *Catanzano*, the County DSS's November 4, 1988 decision constituted an "action" since it resulted in a detrimental change in Plaintiff's care. Plaintiff reasons

---

**24.** Plaintiff's Memo. in Opposition to Defendants' Motion for Summary Judgment, Doc. 23 at 13.

**25.** *See id.* Plaintiff also appears to argue that the County DSS's use of the "discontinuance" notice itself "proves" that this is what the County DSS was actually doing on November 4, 1988, and not "denying" a new application as it contends. *See id.* at 12.

**26.** State Defendant's Memo. of Law in Support of Motion for Summary Judgment, Doc. 12 at 9.

**27.** *See* Plaintiff's Notice of Motion, Doc. 22, exh. "A" at 7.

**28.** If the County DSS had attempted either to discontinue Plaintiff's hospital services on November 4, 1988, or to discontinue her home health care services prior to her admission to the Hospital on October 18, 1988, the court might well reach a different result—but these are not the facts.

that, had she left the Hospital prior to her fair hearing, she would have returned home without necessary home health care services; thus, she in effect suffered a detrimental change in services in the sense that she had no real choice but to remain in the Hospital. However, the present case is distinguishable from *Catanzano* in that here, the County DSS's failure to follow the Plaintiff's physician's recommendation did not result in a *reduction* of services. While noting that the facts in this case are somewhat unique, the court finds that, given the language of the regulations and the caselaw interpreting those regulations, the fact that Plaintiff was deprived of her *choice* of (a lower level of) services is not equivalent to a *reduction* in care.

Additionally, there was no agency "action" on November 4, 1988 since what the County DSS did on this date was *deny* services, rather than discontinue them. Thus, the County DSS did not perform an agency "action" either on October 19, 1988 or on November 4, 1988 that would trigger Plaintiff's entitlement to reinstatement of her home health care services pending her fair hearing.

Under § 431.231, a recipient facing reduction, termination or suspension of services would be entitled to reinstatement of those services pending a fair hearing, so long as the recipient satisfies the criteria previously set forth. Since Plaintiff's authorized home health care services ended upon her admission to the Hospital, and the level of services increased, there was no detrimental change in services. Plaintiff therefore fails to satisfy the criteria under § 431.231, and cannot state a claim based upon failure of the County DSS to reinstate home health care services pending her fair hearing. Accordingly, it follows that Defendants did not violate § 431.211, and that there was no duty to reinstate Plaintiff's home health care services under 42 C.F.R. § 431.231 pending the decision of the fair hearing.

## CONCLUSION

The court finds that there is no issue of genuine material fact as to whether Defendants violated the pertinent Medicaid regulations. Plaintiff has not established that there was an agency "action" in this case that compelled the County DSS to reinstate her home health care services prior to the fair hearing decision. Since the facts in this case do not indicate a violation of the applicable Medicaid regulations, or of due process, Plaintiff fails to state a cause of action under 42 U.S.C. § 1983. In light of this finding, the issue of mootness need not be addressed. Defendants' motions for summary judgment are therefore GRANTED and Plaintiff's complaint DISMISSED.

**IT IS SO ORDERED.**