74 F.3d 406
 50 Soc.Sec.Rep.Ser. 3, Medicare & Medicaid Guide P 43,993
Ruth A. GRANATO, Individually, and on behalf of all other
persons similarly situated, Plaintiff-Appellant,
v.
Mary Jo BANE, as Commissioner of the New York State
Department of Social Services; Donald W. Yager, Jr., as
Acting Commissioner of the Cortland County Department of
Social Services, and Cortland County, New York,
Defendants-Appellees.
Emma McCOY; Alicia Hadad, by her legal guardian and mother,
Florence Ciccarelli, Plaintiffs-Appellants,
v.
Karen SCHIMKE, in her capacity as the Commissioner of the
Erie County Department of Social Services; Mary Jo Bane, in
her capacity as the Commissioner of the New York State
Department of Social Services, Defendants-Appellees.
 Nos. 1836, 2385, Dockets 94-7173, 95-7463.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 8, 1995.
Decided Jan. 22, 1996.
 
 Valerie J. Bogart, New York City (Jonathan A. Weiss, Legal Services For The Elderly, New York City, Ellen Yacknin, Greater Upstate Law Project, Rochester, NY, James Murphy, Legal Services of Central NY, Inc., Cortland, NY, of counsel), for plaintiff-appellant in No. 94-7173.
 Victor Paladino, Assistant Attorney General, Albany, NY (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Peter G. Crary, Assistant Attorney General, Albany, NY, of counsel), for defendant-appellee Mary Jo Bane in No. 94-7173.
 Gregory A. Gates, Binghamton, NY (Hickey, Sheehan & Gates, Binghamton, NY, on the brief), for defendant-appellee Cortland County, New York in No. 94-7173.
 James M. Morrissey, Buffalo, NY (Neighborhood Legal Services, Inc., Buffalo, NY, on the brief), for plaintiffs-appellants in No. 95-7463.
 Before: MINER, WALKER and PARKER, Circuit Judges.
 PARKER, Circuit Judge:
 
 
 1
 The issue in this consolidated appeal is whether New York State's termination of Medicaid home care services upon a recipient's admission to a hospital constitutes an "action" under 42 C.F.R. Sec. 431.201 (1994), thereby triggering the recipient's right to notice, a hearing, and the continuation of home care services pending that hearing. Because we hold that the termination of a recipient's benefits under such circumstances is such an "action," we reverse the District Court judgments below.
 
 BACKGROUND
 
 2
 This case involves the consolidation of two separate appeals by three Medicaid recipients. Each was receiving Medicaid funded care in her home (hereinafter referred to as "home care services"), and each had her services either reduced or terminated upon her entry into the hospital.[1] Intended to maintain the recipient in the community and out of residential care facilities, these services include assistance with personal hygiene, dressing, feeding ("personal care services"), and may include other health-related services such as home nursing by a licensed practical nurse. In New York, these services are administered through county-level offices of New York's Department of Social Services ("DSS").
 
 
 3
 Medicaid itself is a joint federal and state program designed to provide medical assistance to those whose income and resources are insufficient to procure such services for themselves. States are not required to participate in all aspects of the Medicaid program, but if they do participate in a given program they must comply with the federal Medicaid statute and regulations in administering that program. See Caldwell v. Blum, 621 F.2d 491, 494 (2d Cir.1980), cert. denied, 452 U.S. 909, 101 S.Ct. 3039, 69 L.Ed.2d 412 (1981). Consistent with these regulations, a state must put in place a grievance procedure for adjudicating disputes between Medicaid recipients or applicants and program administrators. See 42 C.F.R. Sec. 431.205 (1994).
 
 
 4
 The state agency must provide each recipient with adequate and timely notice when it takes "any action affecting his or her claim." 42 C.F.R. Sec. 431.206(c)(2) (1994). "Action" is defined as "a termination, suspension, or reduction of Medicaid eligibility or covered services." 42 C.F.R. Sec. 431.201 (1994). The adequacy of the notice is to be measured against the requirements of 42 C.F.R. Sec. 431.210 (1994). Ten days' advance notice of the action is required, "except as permitted under Secs. 431.213 and 431.214 of this subpart." 42 C.F.R. Sec. 431.211 (1994). The exception relevant to this appeal includes instances where the recipient "has been admitted to an institution where he is ineligible under the plan for further services." 42 C.F.R. Sec. 431.213(c) (1994). Where the agency acts under an exception to the 10-day advance notice requirement, the agency must "mail a notice not later than the date of action." 42 C.F.R. Sec. 431.213.
 
 
 5
 Furthermore, an agency must grant an opportunity for a hearing to:
 
 
 6
 (1) Any applicant who requests it because his claim for services is denied or is not acted upon with reasonable promptness;(2) Any recipient who requests it because he or she believes the agency has taken an action erroneously.
 
 
 7
 42 C.F.R. Sec. 431.220 (1994). These hearings must cover both eligibility decisions and "[a]gency decisions regarding changes in the type or amount of services." 42 C.F.R. Sec. 431.241(b) (1994).
 
 
 8
 If a recipient wishes to contest an adverse action taken by the agency, he or she must request a hearing within ninety days of the date the notice is mailed. 42 C.F.R. Sec. 431.221(d) (1994). If the recipient requests a hearing before the date of a proposed action, "the agency may not terminate or reduce services until a decision is rendered after the hearing," except under narrowly prescribed circumstances. 42 C.F.R. Sec. 431.230(a) (1994). In New York State, these continuing benefits pending a hearing are called "aid-continuing." 18 N.Y.C.R.R. Secs. 358-2.5, 358-3.6 (1994).
 
 
 9
 The federal regulations also provide for either discretionary or mandatory reinstatement of services pending a hearing on the propriety of an agency action. "The agency may reinstate services if a recipient requests a hearing not more than 10 days after the date of action." 42 C.F.R. Sec. 431.231(a) (1994) (emphasis added).
 
 
 10
 The agency must reinstate and continue services until a decision is rendered after a hearing if--
 
 
 11
 (1) Action is taken without the [10-day] advance notice required under Sec. 431.211 ...
 
 
 12
 (2) The recipient requests a hearing within 10 days of the mailing of the notice of action; and
 
 
 13
 (3) The agency determines that the action resulted from other than the application of Federal or State law or policy.
 
 
 14
 42 C.F.R. Sec. 431.231(c) (1994) (emphasis added).
 
 
 15
 The three appellants, Ruth Granato, Emma McCoy, and Alicia Hadad, were each hospitalized for brief periods of time while receiving home care services. During processing to prepare for being discharged from the hospital, each of the appellants found that their services had been terminated by their respective county DSS administrators without notice of termination or an opportunity to contest that termination prior to it taking effect. All three women challenged the termination of services and requested a continuation of those services, "aid-continuing," until a hearing occurred. All three requests for aid-continuing were initially denied by their county DSS administrators.
 
 
 16
 Granato received personal care services for several months during the summer and autumn of 1988. She was admitted to a hospital on October 19, 1988. Three days later, on October 22nd, Granato's treating physician determined that she could return home and Granato requested the DSS to resume her personal care services. On November 4th, Granato, still hospitalized, received notice from the Cortland County DSS that her personal care services had been discontinued as of October 28th. That notice also explained that Granato would only qualify for aid-continuing care if she requested that care prior to the effective date of the discontinuation notice (October 28th), a date seven days prior to her even receiving notice of discontinuation. On November 9th, Granato requested aid-continuing pending an expedited hearing on the discontinuation of her benefits. The DSS granted the request for an expedited hearing, but denied the request for aid-continuing. As a result, Granato remained hospitalized pending her hearing.
 
 
 17
 Granato filed suit in U.S. District Court for the Northern District of New York on November 16, 1988. She alleged that her right to due process and her federal rights under the Medicaid program were violated. Granato contended, principally, (1) that she was entitled to advance notice that her benefits had been terminated upon hospitalization, (2) that the decision to terminate her benefits as of October 19th, when she entered the hospital, was an "action" for the purposes of 42 C.F.R. Sec. 431.201, or, alternatively, that the formal discontinuation of her benefits on November 4th was such an "action," and (3) that the failure by the DSS to provide advance notice of discontinuation entitled Granato to aid-continuing under 42 C.F.R. Sec. 431.231(c). She sought declaratory, injunctive and monetary relief against the Commissioner of the New York State Department of Social Services, the Acting Commissioner of the Cortland County Department of Social Services, and Cortland County itself. While styled as a class action suit, it does not appear from the record that any motion for class certification was filed.
 
 
 18
 After Granato filed suit, a New York State DSS Administrative Law Judge ("ALJ") held the requested hearing on the merits of Granato's grievance and ordered the County DSS to reinstate Granato's personal care services. Subsequently, the three defendants filed motions for summary judgment contending that Granato's claims for injunctive and declaratory relief were mooted by the ALJ's ruling, and that any claims for compensatory damages were barred by the Eleventh Amendment.[2]
 
 
 19
 On the merits of Granato's claim, the DSS, citing federal and state regulations which require termination of benefits whenever a recipient is hospitalized, contended that those same regulations do not require notice or an opportunity to be heard where termination is automatic. The DSS further maintained that the treating physician's order that Granato's personal care services be resumed upon discharge from hospital was properly considered to be a new application for benefits, rather than a resumption of suspended benefits. As such, Granato was merely an applicant with no right to "aid-continuing" pending a hearing contesting the denial of that application.
 
 
 20
 Granato filed a cross-motion for summary judgment on her declaratory and injunctive claims asserting that the relevant Medicaid regulations clearly required advance notice of termination of benefits and "aid-continuing" under the circumstances in her case.
 
 
 21
 In January 1994, the district court granted the defendants' motions for summary judgment, holding that the termination of Granato's personal care services upon hospitalization (October 19th) was not an "action" under 42 C.F.R. Sec. 431.201 because Granato suffered no detrimental change in health care by being hospitalized, but rather received more comprehensive care during her hospitalization. Accepting the DSS's contention, the district court further held that the November 4th letter notifying Granato that her benefits had been discontinued did not constitute an "action" because Granato's request for a resumption of benefits following hospitalization was technically a new application for benefits, which the DSS had simply denied. Consequently, the district court held that Granato was not entitled to aid-continuing. Granato v. Bane, 841 F.Supp. 64 (N.D.N.Y.1994) (Scullin, J.). The district court then denied a motion for reconsideration. Granato now appeals this ruling.
 
 
 22
 McCoy, a personal care services recipient since at least 1988, was admitted to a hospital on October 8, 1992. McCoy's treating physician determined that McCoy could return home on October 13th and requested resumption of her personal care services. That same day, the Erie County DSS notified McCoy that her personal care services had been discontinued effective immediately. The DSS, interpreting McCoy's physician's request for resumption of personal care services as a new application for services, denied the application on November 4, 1992. McCoy's attorney requested a hearing to challenge the denial of benefits and aid-continuing. Her request for aid-continuing was denied.
 
 
 23
 Hadad, another long-time recipient of home care services including home nursing attention by a licensed practical nurse, was admitted to a hospital on July 4, 1992. On July 21st, Hadad was notified by the Erie County DSS that, contrary to the request of her treating physician, her home nursing would not be reinstated, but that she would continue to receive personal care services. On September 15, 1992, Hadad requested a hearing at which the ALJ granted aid-continuing pending final resolution of Hadad's claims.
 
 
 24
 On November 25, 1992, McCoy and Hadad filed suit against the New York State DSS and the Erie County DSS in the U.S. District Court of the Western District of New York. The suit alleged that the Erie County DSS had failed to provide advance notice of its decision to terminate or reduce their home care services and that it wrongfully withheld aid-continuing once they contested the reduction or termination of their home care services, in violation of their rights to due process and their rights under federal Medicaid law. McCoy and Hadad sought declaratory and injunctive relief. This suit was also styled as a class-action, but no motion to certify a class was ever submitted.
 
 
 25
 The parties consented to proceed before a magistrate judge and McCoy and Hadad immediately moved for a preliminary injunction seeking restoration of their prior home care services. This motion was withdrawn when the defendants agreed to reinstate those services pending disposition on the merits. Both parties then moved for summary judgment and the magistrate judge rendered judgment in favor of the DSS, relying heavily on the district court's opinion in Granato. McCoy v. Schimke, No. 94-CV-774A (W.D.N.Y. April 25, 1995) (Foschio, Mag. J.). Hadad and McCoy now appeal from this ruling.
 
 DISCUSSION
 I. Mootness
 
 26
 As a preliminary matter, the New York State DSS argues that Granato's claims for declaratory and injunctive relief are moot because her services were reinstated following the hearing before the ALJ. We hold that Granato's claims for declaratory and injunctive relief are not moot because they are "capable of repetition yet evading review." See Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982); Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).
 
 
 27
 In order to show that an action is not moot under the "capable of repetition yet evading review" doctrine, a party must show that
 
 
 28
 (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.
 
 
 29
 Murphy, 455 U.S. at 482, 102 S.Ct. at 1183 (citations omitted). This case meets those requirements. First, the issue here evaded review because Granato was granted an expedited hearing and had her benefits restored soon after filing suit. It is also telling that, in the cases of both McCoy and Hadad, the State was willing to reinstate their services as soon as they filed suit. Second, Granato has serious chronic health problems which will require home care services as well as the possibility of periodic hospitalizations for the rest of her life. Therefore, there is a "reasonable expectation" that she will face the same action again.[3]
 
 II. The Merits
 
 30
 There are, essentially, three issues before us on appeal. First, does the change in home care services which occurred when the recipients were hospitalized constitute an agency action under 42 C.F.R. Sec. 431.201? If so, what process was due those recipients as a consequence of that action? Finally, were the recipients entitled to aid-continuing pending disposition on the merits of their challenge to the agency action?
 
 
 31
 Appellants contend that there are two separate events which constitute agency action in each of their cases: the termination of services during the period of hospitalization and the denial of full home care services upon discharge from the hospital.
 
 
 32
 As stated earlier, the lower court concluded in Granato, 841 F.Supp. 64, that the termination was not an agency action because Granato suffered no detrimental change in services upon hospitalization. There is nothing in the applicable regulations, though, which states that a change in services must be "detrimental" for it to constitute an action. Although there may be circumstances that warrant such a requirement, cf. Maher v. White, Civ. No. 90-4674, 1992 WL 122912 (E.D.Pa. June 2, 1992), we do not believe that such a standard makes sense in the context of home care services. As the appellants point out, recipients may actually be worse off (and thus have suffered a negative decision) by being forced to stay in a hospital. While the agencies thought that a change in services would work to the benefit of the appellants, in all three case both they and their physicians clearly disagreed with the agencies' decisions.
 
 
 33
 Alternatively, appellees urge us to affirm the lower courts in holding that, because the regulations dictate that home care services are not available to hospitalized recipients, those regulations have the effect of automatically terminating the recipient's entitlement to services upon admission to the hospital, and that such automatic termination does not constitute agency action.
 
 
 34
 However, there is no compelling reason to treat the required discontinuation of services while the recipient is hospitalized as a termination of services rather than as a mere suspension of those services until the recipient is discharged. See 42 U.S.C. Sec. 1396d(a)(24); 42 C.F.R. Sec. 440.170(f); 18 N.Y.C.R.R. Sec. 505.14(a)(1). Because this suspension is not the result of anything done (or not done) by the agency, but is instead required by the statute and regulations, it does not involve any "action" under the regulations. Of course, just as this suspension automatically occurs when the recipient enters the hospital, the suspension also automatically ends when the recipient leaves the hospital and services are restored, unless the agency has taken some action in the interim.
 
 
 35
 In these cases, the DSS decided to treat the required discontinuation of home care services as an automatic termination of benefits and to treat any subsequent request for a resumption of services as a new application.[4] The courts below erred in concluding that no agency action occurred in these circumstances. We hold that the DSS's decision to treat the discontinuance of services during a hospitalization as an "automatic" termination (as opposed to a suspension) of those services itself constitutes an agency "action" as defined in the regulations. That action triggers a notice requirement and provides Appellants with certain rights to due process. The fact that home care services are unavailable during the period of hospitalization does not obviate the requirement that the DSS notify the recipient in a timely and adequate manner that those services are being treated as terminated, if that is what the agency decides to do. In these circumstances, there is no additional "action" following the recipient's discharge from the hospital; the decision terminating services has already been made.
 
 
 36
 Advance notice of the action was not required because these cases fall within the exception to the advance notice requirement contained in 42 C.F.R. Sec. 431.213(c), where "[t]he recipient has been admitted to an institution where he is ineligible ... for further [home care] services." Nevertheless, the DSS was required to give notice no later than the date of the action itself. 42 C.F.R. Sec. 431.213. In fact, notice was given, but the DSS maintained that notice was not required because of the automatic nature of the termination of services upon hospitalization. The DSS therefore concluded there was no right to aid-continuing.
 
 
 37
 We hold that the DSS was required to provide aid-continuing "until a decision is rendered after a hearing" so long as the recipient requested a hearing "within 10 days of the mailing of the notice of action." 42 C.F.R. Sec. 431.231(c)(2).
 
 
 38
 In Granato, the district court found that mandatory aid-continuing under Sec. 431.231(c) applied only in circumstances where the recipient was entitled to advance notice but did not receive it. See Sec. 431.231(c)(1) (aid-continuing required where "[a]ction is taken without the advance notice required under Sec. 431.211"). We reject that interpretation. We believe the regulation should be read to cover any situation in which 10-day advance notice is not given, including those situations where advance notice is not required.
 
 
 39
 The history of the regulation is instructive. The regulation previously read:
 
 
 40
 In any case where action was taken without timely notice, if the recipient requests a hearing within 10 days of the mailing of the notice of the action, and the agency determines that the action resulted from other than the application of State or Federal law or policy or a change in State or Federal law, assistance shall be reinstated and continued until a decision is rendered after the hearing.
 
 
 41
 45 C.F.R. Sec. 205.10(a)(7) (1973). "Timely" was defined in that regulation as 10-day advance notice. 45 C.F.R. Sec. 205.10(a)(4)(i)(A) (1973). Thus, under the earlier version, aid-continuing was available whenever advance notice was not provided and the other conditions were met. Moreover, if Sec. 431.231(c) were not read to cover those situations where, pursuant to an exception, notice was sent the day of the action, then no provision would require reinstatement in those cases and a recipient would be left without a guarantee of aid-continuing. That result would be contrary to the purpose of the home care services regulations, which is to allow as many Medicaid recipients as possible to remain in their own homes.
 
 
 42
 Accordingly, we hold that Sec. 431.231(c) applies both where a recipient was entitled to advance notice but did not receive it, and where the agency was permitted under Sec. 431.213 to send notice on the day of the action.
 
 
 43
 We also hold that Sec. 431.231(c)'s third requirement--that the agency determine that the action resulted from "other than the application of Federal or State law or policy"--was not a bar to aid-continuing in this case. The "action" referred to here is the decision of the agency to treat the temporary discontinuation of home care services upon hospitalization as a termination of the recipient's entitlement to those services upon discharge from the hospital. That action was in no way required by federal or state law. Although the precise meaning of the regulation is unclear, there can be no question that this provision must be read narrowly--otherwise, the due process interests animating the regulations could be completely circumvented by any state policy, however arbitrary.
 
 
 44
 Because we find in favor of the appellants under the regulatory requirements, we do not need to reach their due process claims.
 
 CONCLUSION
 
 45
 The Appellee agencies' decisions to terminate the Appellants' home care services upon their admission to the hospital constituted "actions" under applicable Medicaid regulations, thus requiring notice and aid-continuing pending a hearing, if timely requested. The District Courts' judgments are reversed, and the cases are remanded for further action consistent with this opinion.
 
 
 
 [1]
 The district court and the parties have, at various times, referred to both personal care services and home health care services. We do not think that the distinction between these two types of services makes any difference to the outcome in this case. However, because each term is specifically defined in the regulations, for purposes of this opinion, when we refer to the services collectively, we use the term "home care services."
 
 
 [2]
 Cortland County also asserted that no independent basis existed for finding any liability on its part separate and distinct from the liability of the Cortland County Department of Social Services and thus that it should be dropped as a defendant. The district court never reached this argument; therefore, we will not consider it at this time
 
 
 [3]
 The two cases have been consolidated on appeal. The Erie County DSS did not file a separate brief in McCoy v. Schimke, apparently relying upon the New York DSS's brief in Granato v. Bane. While this is perfectly acceptable, the Court considers the failure by the Erie County DSS to file a brief regarding the mootness issue as a concession that the claims of McCoy and Hadad are not moot
 
 
 [4]
 One could analogize this situation to one where a recipient takes a trip out of state to visit relatives. Services would be discontinued until the recipient's return when they would presumably be reinstated. If, instead, the DSS decided to terminate services, that decision would certainly be an "action" triggering notice and hearing rights