Asher and Rachel GRAUS and Malka
Graus, by her parents Asher and Rachel
Graus, et al., individually and on behalf
of all others similarly situated, Plain-
tiffs,

v.

Gregory KALADJIAN, Acting Commis-
sioner of the New York State Depart-
ment of Social Services, and Barbara
Sabol, Administrator of the New York
City Human Resources Administration,
Defendants.

No. 93 CIV. 3743(JSR).

United States District Court,
S.D. New York.

April 28, 1998.

---

## OPINION AND ORDER

RAKOFF, District Judge.

Once the state confers Medicaid benefits on an eligible individual, it may not thereafter terminate such benefits because of subsequent loss of eligibility without affording the individual due process. But does the individual also have a right, enforceable under 42 U.S.C. § 1983,[1] to challenge the ways in which procedures and mechanisms that led to such termination violated Medicaid's administrative rules? The answer, in terms of this case, is no.

Medicaid is a federally funded program of medical assistance for needy people that, in the case of New York City, is administered by the New York City Human Resources Administration (the "City defendant") under the supervision of the New York State Department of Health (the "State defendant").[2] *See* 42 U.S.C. § 1396 *et seq.* The instant lawsuit was brought, pursuant to § 1983,[3] by New York City Medicaid recipients whose benefits have been terminated, or are threatened with termination, by defendants' alleged failure to act in a timely manner to redetermine the recipients' Medicaid eligibility.

Specifically, plaintiffs allege that in numerous cases[4] the City defendant fails to act with sufficient expedition to recertify Medicaid recipients' eligibility prior to the annual expiration of their Medicaid authorization. Instead, according to the Complaint, the City defendant issues "Notice of Intent to Discontinue Medical Assistance" forms without giving recipients an opportunity to submit documentation establishing their continuing Medicaid eligibility—in some cases issuing these same forms even after recipients have submitted all required documentation—and then ceases paying benefits to these Medicaid recipients until their eligibility is subsequently recertified. Plaintiffs contend that these procedures collectively comprise a "pattern, practice, and policy" that violates § 1983 because it contravenes numerous administrative regulations—specifically, 42 C.F.R. §§ 435.916, 435.919, 435.930, 431.211, 431.230, and 431.231—as well as the Due Process Clause of the Constitution.

Plaintiffs further allege that the State defendant fails to ensure that the City defendant complies with all applicable laws and regulations and fails adequately to supervise the City defendant's processing of Medicaid recertifications so as to ensure timely recertification and continued receipt of benefits until recertification. Plaintiffs contend these failures similarly constitute a "pattern, practice, and policy" that violates § 1983 because it contravenes administrative regulation 42 C.F.R. § 431.10, statutory provisions 42 U.S.C. §§ 1396a(a)(1) and (5), and the Due Process Clause of the Constitution.

---

1. Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. At the time the suit was brought, the plan was supervised by the New York State Department of Social Services.

3. Other bases for bringing suit arguably nascent in the vaguely worded Complaint have been implicitly disavowed or abandoned by plaintiffs in their subsequent motion papers, which rely entirely on § 1983.

4. At an earlier stage of these proceedings, the Honorable Miriam Goldman Cedarbaum, U.S.D.J., to whom the case was then assigned, certified two classes of plaintiffs.

Following discovery, all parties moved for summary judgment. The State defendant sought summary judgment on the grounds that the Eleventh Amendment bars plaintiffs' claims for injunctive relief, that the statutory provisions and administrative regulations on which plaintiffs rely do not create enforceable rights under § 1983, and that plaintiffs fail to state a claim under the Due Process Clause because the State already provides constitutionally sufficient due process. The City defendant sought summary judgment on the grounds that the administrative regulations on which plaintiffs rely do not create enforceable rights under § 1983, that there is no Due Process violation, and that the City defendant is, in any event, in compliance with federal law. Plaintiffs' motion for summary judgment was limited to the contention that defendants' recertification system violates federal law because it permits automatic computer termination of benefits at the end of the authorized period without sufficient opportunity for recertification prior to termination.

For the reasons stated below, defendants' motions for summary judgment are granted with respect to plaintiffs' statutory and regulatory claims and denied with respect to plaintiffs' due process claims, while plaintiffs' motion for summary judgment is denied in its entirety.

■ *Eleventh Amendment.* At the outset, the State defendant argues that the Eleventh Amendment precludes injunctive relief against the State, including its agencies and its commissioners acting in their official capacities. It is well settled, however, that while the Eleventh Amendment bars claims for damages against such defendants,[5] prospective injunctive relief against a state officer sued in his official capacity is permissible. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Burgio and Cam-*

*pofelice, Inc. v. NYS Dep't of Labor,* 107 F.3d 1000, 1006 (2d Cir.1997). Although the distinction between injunctive relief and damages may not be easily applied to certain forms of action, such as a quiet title action, *see Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), the relief requested in the instant case is classic injunctive relief, in no way barred by the Eleventh Amendment.

■ *Statutory and Regulatory Claims.* The State and City defendants are on stronger ground, however, when they argue that the violations of administrative rules and (in the case of the State defendant) statutory provisions here alleged will not support a claim under § 1983. To show that a statute creates rights that are enforceable under § 1983, a plaintiff must show that the statute is (1) "intended to benefit" the plaintiff seeking to enforce it, (2) is mandatory rather than hortatory, and (3) is not so vague and amorphous as to be "beyond the competence of the judiciary to enforce." *Wilder v. Virginia Hospital Assoc.,* 496 U.S. 498, 509, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990).[6] Here, plaintiffs rely, as to the State defendant, on certain statutory provisions of the Medicaid Act that they claim meet this tripartite test, and also, as to both defendants, on certain administrative regulations enacted pursuant to the Act.

■ These latter claims raise threshold issues of whether an administrative regulation, standing alone, can create an enforceable right under § 1983, and, if not, how closely the regulation, in order to be enforceable, must be linked to a statutory provision that creates such a right. *See generally Wright v. City of Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 420 n. 3, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). *Also, compare, e.g., Loschiavo v. City of Dearborn,* 33 F.3d 548, 551 (6th Cir.1994) (stating that a

---

**5.** Although plaintiffs' Complaint appears to seek damages from the State defendant, *see* Complaint at 51, plaintiffs represented at the October 15, 1997 hearing that they were no longer pursuing their damages claim, *see* October 15, 1997 Transcript at 11.

**6.** In addition, no enforceable § 1983 right exists if Congress "by express provision or other specif-

ic evidence from the statute itself ... intended to foreclose such private enforcement." *Wilder,* 496 U.S. at 520–21, 110 S.Ct. 2510 (quoting *Wright v. City of Roanoke Redev. and Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)) (internal quotation marks omitted).

regulation can create an enforceable right under § 1983); *Evelyn V. v. Kings Cty. Hosp. Ctr.*, 956 F.Supp. 288, 296 (E.D.N.Y. 1997) (same); *Kessler v. Town of Niskayuna*, 1991 WL 278788, at *2 (N.D.N.Y.1991) (same), *with, e.g., Harris v. James*, 127 F.3d 993, 1009 (11th Cir.1997) (holding that a regulation does not create a federal right unless it is tightly linked to a statutory provision that itself creates an enforceable right); *Gracia v. Brownsville Housing*, 105 F.3d 1053, 1057 (5th Cir.1997) (stating that it is not clear whether regulations can create rights enforceable under § 1983); *Smith v. Kirk*, 821 F.2d 980, 984 (4th Cir.1987) (holding that an administrative regulation cannot create an interest enforceable under § 1983 that is not already implicit in the enforcing statute). *Cf. Granato v. Bane*, 74 F.3d 406 (2d Cir.1996) (determining right to notice and hearing by reference to administrative regulations as well as constitutional due process).

Not every rule creates a right. Upon analysis, this Court concludes that § 1983 does not authorize indiscriminate private enforcement of the vast universe of federal regulations but extends such enforcement only to those regulations that further define the substance of a statutory (or constitutional) provision that itself creates an enforceable right. *See Harris*, 127 F.3d at 1009; *Sobky v. Smoley*, 855 F.Supp. 1123, 1143 (E.D.Cal.1994) ("The regulation at issue in *Wright* defined a term used in the statute itself; unlike the regulation at issue here, it neither stood alone nor was analyzed independently of its statutory mooring."). In this Court's view, no other result is consonant with separation of powers, for if Congress intended that only certain specific statutory provisions give rise to private enforcement actions under § 1983, *see Wilder*, 496 U.S. at 509–11, 110 S.Ct. 2510, it cannot have intended that private

actions be predicated on administrative regulations not closely connected to these statutory sources of private power.

Against this backdrop, we turn to the specific statutory and regulatory provisions here invoked. Although the Complaint makes reference to numerous Medicaid Act provisions and regulations, the parties' summary judgment papers and oral argument have clarified that plaintiffs now rely, so far as the City defendant is concerned, only on 42 C.F.R. § 435.930(b), and, so far as the State defendant is concerned, only on 42 U.S.C. § 1396a(a)(5), 42 C.F.R. § 431.10, and 42 U.S.C. § 1396a(a)(1).[7]

*42 C.F.R. § 435.930(b)*, on which the claims against the City defendant are premised, provides that "[t]he agency must ... [c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible." According to plaintiffs, this regulation serves to implement statutory provision 42 U.S.C. § 1396a(a)(19), which mandates that state Medicaid plans contain "such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of recipients." This Court, however, is in agreement with those courts that have concluded that this amorphous provision does not itself create a federal right privately enforceable under § 1983. *See Harris*, 127 F.3d at 1010; *see also Stewart v. Bernstein*, 769 F.2d 1088, 1093 (5th Cir.1985); *Bumpus v. Clark*, 681 F.2d 679, 683 (9th Cir.1982), *op. withdrawn as moot*, 702 F.2d 826 (9th Cir.1983). Nor does the regulation, § 435.930(b), in any relevant way serve to define the specific statutory content of § 1396a(a)(19).[8] Rather, both the statuto-

---

7. Moreover, any claims premised on the other provisions and regulations referenced in plaintiffs' blunderbuss Complaint would suffer from the same infirmities discussed below.

8. While *Salazar v. District of Columbia*, 954 F.Supp. 278 (D.D.C.1996), permitted private enforcement of this particular regulation under § 1983, *see id.* at 326–28, the *Salazar* court, in an otherwise comprehensive opinion, did not discuss the issue here presented, instead stating generally that the question of the enforceability

of all of the Medicaid statutory provisions at issue in the case had been decided by a judge to whom the case had been previously assigned. *See id.* at 324 n. 92. However, the previous opinion to which the court appeared to give deference, *Wellington v. District of Columbia*, 851 F.Supp. 1, 5–6 (D.D.C.1994), did not in fact decide the enforceability of various of the statutory provisions and implementing regulations before it and nowhere specifically discussed § 435.930(b).

ry provision and the regulation simply express in vague and general forms the overall goals of the program, a patently insufficient base on which to ground a private enforcement action under § 1983.[9]

■ *42 U.S.C. § 1396a(a)(5) and 42 C.F.R. § 431.10*, on which certain of the claims against the State defendant are premised, are similarly insufficient to support such claims. The statutory provision, § 1396a(a)(5), states that a state plan must "provide for the establishment or designation of a single State agency to administer or supervise the administration of the plan." On its face, this provision is not intended for the benefit of private plaintiffs. *See Sobky*, 855 F.Supp. at 1144–46 (concluding that the rationale behind the enactment of these provisions was the proper allocation of authority within the state and "the efficient and uniform operation of the Medicaid program, rather than ... the provision of a direct or immediate benefit to Medicaid recipients or providers"); *see also Rodriguez v. Debuono*, 177 F.R.D. 143, 1997 WL 529054, at *21 n. 29 (S.D.N.Y.1997); *Ralabate v. Wing*, 1996 WL 377204, at *3 n. 28 (W.D.N.Y.1996). It follows that 42 C.F.R. § 431.10, which implements the foregoing statutory provision simply by providing that a state must "[s]pecify a single State agency ... to administer or supervise the administration of the plan," does not create a basis on which to ground a private enforcement action under § 1983.

Finally, *42 U.S.C. § 1396a(a)(1)*, on which plaintiffs also attempt to posit a claim against the State defendant, requires that "[a] State plan for medical assistance must ... provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them." Arguably, this section creates a federal right that meets the *Wilder* test of a right that a private person can enforce pursuant to § 1983, since Medicaid recipients are the intended beneficiaries of this provision (which was meant to ensure statewide access to services), the provision's command is mandatory and specific,

the requirement is within the competence of the judiciary to enforce, and Congress has not explicitly or implicitly foreclosed such a remedy. *See Wilder*, 496 U.S. at 520–23, 110 S.Ct. 2510; *Sobky*, 855 F.Supp. at 1134. Nevertheless, assuming *arguendo* such private enforceability, the State defendant's motion for summary judgment must still be granted with respect to plaintiffs' claims under this provision, because plaintiffs have not come forward with any admissible evidence that the state plan is not statewide and is not mandatory for all of the political subdivisions that administer it. Under the plain language of the provision, then, plaintiffs have failed to establish a violation.

■ *Due Process Claims.* This leaves plaintiffs' due process claims. A person whose Medicaid benefits are terminated is entitled to constitutional due process, such as notice and a hearing, if timely requested. *See Granato v. Bane*, 74 F.3d at 413. Applying that principle to the instant controversy, however, numerous factual issues remain in dispute that preclude summary judgment. For example, in response to plaintiffs' central allegations, defendants have come forward with admissible evidence that existing practices ensure that the great majority of recipients get recertification notices in sufficient time to prevent termination of benefits. Defendants have also presented evidence that, whatever may have been the case in the past, recipients are no longer losing benefits because they have not been recertified before the end of their eligibility period, that accordingly the challenged program no longer operates in the unlawful manner that plaintiffs allege, that any deprivations are due to "random, unauthorized acts by state employees" rather than to system-wide failures, and that the recipients' ability to challenge any adverse decisions through administrative hearing processes and through Article 78 proceedings in state court affords them constitutionally sufficient due process. *See generally Hellenic American Neighborhood Ac-*

---

**9.** For the same reasons, there is no merit to the attempt in plaintiffs' papers to link § 435.930(b) to two other nebulous provisions of the statute: 42 U.S.C. § 1396a(a)(10)(A), which requires that state plans provide "for making medical assis-

tance available" for eligible individuals; and 42 U.S.C. § 1396a(a)(17), which requires that state plans "include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan."

*tion Committee v. City of New York,* 101 F.3d 877, 880 (2d Cir.1996). In response, plaintiffs, among other things, dispute defendants' statistics on the percentage of recertifications that are completed in a timely fashion and claim that the new procedures that defendants have put in place are inadequate.

The net is that the parties have come forward with sufficient evidence to create genuine issues of material fact as to whether or not there are serious systemic failures in defendants' current policies and programs that may effectively deprive recipients of their constitutionally guaranteed rights to notice, an opportunity to be heard, and a reasoned decision on their continued eligibility for benefits. *See Mayer v. Wing,* 922 F.Supp. 902, 911 (S.D.N.Y.1996) (citing *Pollnow v. Glennon,* 757 F.2d 496, 501 (2d Cir. 1985)).

As for the one issue on which plaintiffs seek summary judgment, while the parties agree that, unless certain data is entered, the computer system employed in the administration of the Medicaid program terminates benefits automatically at the end of a recipient's twelve-month authorization period, the parties offer conflicting evidence as to the impact of this practice on recertification. Put another way, the Court concludes that defendants have advanced sufficient evidence of timely recertification to preclude judgment against them on this issue at this stage of the proceedings.

For the foregoing reasons, defendants' motions for summary judgment are granted against plaintiffs' claims premised on violations of the Medicaid statute and regulations but denied as to plaintiffs' claims premised on violations of the Due Process Clause, and plaintiffs' motion for summary judgment is denied in its entirety. The parties are directed to jointly call Chambers by no later than May 4, 1998 to schedule a trial date for the remaining claims.

SO ORDERED.