[No. B001328. Second Dist., Div. Three. Dec. 21, 1984.]

ANNA JENESKI et al., Plaintiffs and Appellants, v.
BEVERLEE A. MYERS, as Director, etc., et al., Defendants and
Respondents.

**COUNSEL**

Marks & Stevenson and Ronald S. Marks for Plaintiffs and Appellants.

Michael C. Parks, Michael A. Dowell and Bruce Iwasaki as Amici Curiae on behalf of Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and Louis Verdugo, Jr., Deputy Attorneys General, for Defendants and Respondents.

OPINION

LUI, J.—Plaintiffs and appellants are Medi-Cal recipients who sought to have the trial court enjoin respondent Department of Health Services (Department), its director, and the Governor from implementing a statute and regulations that deleted certain drugs from a list of those for which Medi-Cal would reimburse and put other drugs on a list for which prior authorization was required.[1] The trial court initially granted an order to show cause re preliminary injunction and a temporary restraining order, limited to the named Medi-Cal recipients.[2] The hearing on the order to show cause was set for September 22, 1982. After the first amended complaint was filed, a second judge issued a new order to show cause regarding the preliminary injunction. The temporary restraining order, dated September 2, 1982, restrained respondents from "[i]mplementation of Section 53(2) of AB799 and implementation of Title 22, California Administrative Code sections 59999 a-e (Drug Formulary Section) and Title 22, California Administrative Code sections 51003 and 51056 (TAR and Emergency Sections) as they apply to Section 59999 a-e."[3]

On September 22, 1982, a hearing was held pursuant to the order to show cause. In an order dated October 1, 1982, Judge Leon Savitch ordered that respondents are "hereby enjoined and restrained *pending the completion of*

---

[1]The statute, originally designated California Assembly Bill No. 799 (AB 799), was enacted as emergency legislation. Section 53(2) of the bill was intended to delete $20 million and then $16 million, in an amended version, from the general fund. Statutes 1982, chapter 328, section 53(2), page 1606 provides: "It is the intent of the Legislature to reduce pharmacy program expenditures . . . by twenty million dollars ($20,000,000) General Fund money. To achieve this savings goal, the department shall eliminate drugs, medical supplies, nonprescription and prescription drugs from the Medi-Cal Drug Formulary, or from the Medi-Cal program, and implement other utilization controls for retained items. In implementing this provision, the director shall determine which drugs shall be eliminated based on standards of cost, critical therapeutic importance, safety, efficacy and need. It is the intent of the Legislature that, in making these reductions, the department shall give priority consideration to the elimination of common medicine chest medical supply items, over-the-counter drug products, prescription drug products which afford minor symptomatic relief, and codeine and other narcotic analgesics. In implementing this provision, the director of health services shall not be required to comply with the provisions of sections 14053.5 and 14184 of the Welfare and Institutions Code, insofar as the latter section requires the director to receive a report from the Medical Therapeutic Drug and Advisory Committee prior to making determinations as to the additions and deletions from the formulary."

R-44-82 (Cal. Admin. Code, tit. 22, §§ 59998-59999), the regulation implementing AB 799, deleted some drugs from the Formulary and required prior authorization for others. Some medications with codeine, at first deleted, were later reinserted.

[2]The original complaint named other plaintiffs as well; a first amended complaint dropped the plaintiffs who were not individual Medi-Cal recipients.

[3]TAR stands for treatment authorization request and involves the procedures for prior authorization of drugs requested by Medi-Cal recipients, their pharmacists, and doctors. The prior authorization is sought on a patient-by-patient basis and is requested by the Medi-Cal providers.

*public hearings* pursuant to Government Code section 11346.1(e) from removing or deleting from the Medi-Cal Program drugs contained in the following classifications under the authority of Assembly Bill No. 799, section 53(2) or the regulations promulgated in connection therewith: [¶] 1. Anticholinergic agents (parasympatholytics), except atropine, belladonna alkaloids with phenobarbital. [¶] 2. Antihistamines, antihistamine-containing combinations, and antipruritics. [¶] 3. Narcotic analgesics (other than codeine), alone or in combination, except those requiring triplicate prescriptions. [¶] 4. Cough preparations, expectorants, and nasal decongestants, alone or in combinations. [¶] 5. Non-narcotic analgesics." (Italics added.) All other relief was denied without prejudice.

Responding to appellants' request to extend the injunction so that the Department could evaluate the comments made at public hearings on November 18 and 19, 1982, the court issued an order modifying the preliminary injunction and extended the force and effect of its October 1 order to December 3, 1982. However, a further request by appellants to modify the injunction (1) to extend its effect until the regulations were adopted and (2) to enjoin deletion of dermatological anti-inflammatory and hypnotic/sedative classifications, currently subject to the prior approval process, as well as anti-arthritic drugs, was denied in an order filed December 9, 1982. In addition, the court also ordered that the preliminary injunction issued October 1, as modified on November 16, "is hereby dissolved."

Appellants' notice of appeal states that the appeal is from "the judgment of the above-entitled Court . . . entered December 3, 1982 [*sic*], dissolving the Preliminary Injunction issued on September 22, 1982, and denying Plaintiffs' request to modify said Preliminary Injunction as prayed for in Plaintiffs moving papers."

### GENERAL BACKGROUND

█ Title XIX of the Social Security Act, 42 U.S.C. section 1396 et seq., "establishes the Medicaid program under which participating States may provide federally funded medical assistance to needy persons. The statute requires participating States to provide qualified individuals with financial assistance in five general categories of medical treatment." (Fns. omitted; *Beal* v. *Doe* (1977) 432 U.S. 438, 440 [53 L.Ed.2d 464, 469, 97 S.Ct. 2366].) "If the state wishes to maintain a more comprehensive program, it may provide seven of sixteen listed benefits [including prescription drugs[4]]

---

[4]California has chosen to cover the "[p]urchase of prescribed drugs . . . subject to the Medi-Cal Drug Formulary and utilization controls." (Welf. & Inst. Code, § 14132, subd. (d).)

to the less poor, characterized as the 'medically needy.' 42 U.S.C. § 1396a(a)(13)(C). A state providing specific services for the 'medically needy' must also provide them for the 'categorically needy.' [Citations.] Moreover, all persons within a given category must be treated equally." (*White* v. *Beal* (3d Cir. 1977) 555 F.2d 1146, 1149.)

"A state may pay 'part or all of the cost of . . . care and services,' 42 U.S.C. § 1396d(a), but it 'may not deny or reduce the amount, duration, or scope of a required service . . . to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.' 42 C.F.R. § 440.230(c)(1) (1978). Although a state 'may place appropriate limits on a service based on medical necessity or on utilization control procedures,' *id.* § 440.230(c)(2), '[e]ach service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.' *Id.* § 440.230(a)." (*Simpson* v. *Wilson* (D.Vt. 1979) 480 F.Supp. 97, 100.)

Courts have noted "[t]he significance of Medicaid, and the individual and collective human suffering which it ameliorates, rehabilitates, and forestalls . . . ." (*Bass* v. *Richardson* (S.D.N.Y. 1971) 338 F.Supp. 478, 483.) And, while courts are cognizant of the need for fiscal economy, " 'budgetary constraints cannot excuse a failure to comply with federal standards.' " (*California Ass'n of Bioanalysts* v. *Rank* (C.D.Cal. 1983) 577 F.Supp. 1342, 1353, fn. 14.)

### FACTS[5]

Appellants filed numerous declarations in support of their requests for injunctive relief and modification. Medi-Cal recipients, doctors, and pharmacists declared the hazards of removing antihistamines, topical dermatological preparations, cough and cold preparations, and other prescription drugs from the Medi-Cal formulary. One dermatologist declared the system a "mockery of any attempt to impart any rational health care to the needy." Another physician stated that the new system constituted a "clear class system of medical treatment" and a "double standard of health care." Another doctor stated that the new system would "severely restrict my ability to effectively treat my patients, and is a rather insensitive and callous act on the part of the Legislature." Another dermatologist deemed it "pure idiocy."

---

[5]The record on appeal consists of a two-volume clerk's transcript and two additional volumes of exhibits pursuant to stipulation to augment the record.

They detailed the hazards to patients, including "dire life-threatening effects."[6] In addition, they asserted that the new plan would be more costly in that minor problems would not be handled and thus would escalate into more serious medical problems that would require hospitalization and more expense for the state. The dangers of the alternative drugs were also outlined.

Declarations filed by appellants and in the companion case of *Fabach* v. *Myers* (No. C 432321) attempt to demonstrate that prior authorization approvals are "essentially unavailable." The added documentation for physicians and pharmacists is seen as unduly time consuming. As one dermatologist declared, it "makes it totally impractical for me to continue even attempting to treat these patients." Others declared that an overwhelming percentage of TAR's were rejected on the basis that the patient's ailment was not "life threatening" and some believed that the TAR offices were utilizing delaying tactics in order to discourage TAR's. Some believed that it would be virtually impossible for the TAR offices to process the requests in a timely manner and that for all intents and purposes TAR's will be unavailable to the Medi-Cal recipient.

As stated in the memorandum of points and authorities in opposition to the order to show cause re preliminary injunction in the *Fabach* case, respondents conceded that there is no "joy in implementing the required cutbacks." Nevertheless, declarations in support of respondents' position stated that the basis for the reduction was the legislative standard of "cost, critical therapeutic importance in relation to the universe of available pharmaceuticals, safety, efficacy, and need." The purpose, which respondents believe they achieved, was to effect the required savings with the least possible adverse impact upon the beneficiary community. A declaration of respondent Myers states that the Department sought to promulgate a plan "least harmful of all possible alternatives to the health, safety and wellbeing of the beneficiary community."

Dr. Toshiko Iwata, a physician and pharmacist employed as a senior medical consultant in the Medical Policy and Standards Section of the Benefits Branch in the Department of Health Services, stated that the elimination of various categories of drugs "will not have dire life-threatening effects upon the Medi-Cal population . . . ." Rather, he believes that " 'the injudicious

---

[6] Section 38 of AB 799 added section 14133.3 to the Welfare and Institutions Code, which provides in pertinent part: "The director shall require fully documented medical justification from providers that the requested services are *medically necessary to protect life or prevent significant disability,* on all requests for prior authorization." (Italics added.) Before the enactment of AB 799, one had to demonstrate only that the treatment was "medically necessary."

use of medication should be discouraged . . .'" and that, in any event, many of the drugs are over-the-counter drugs that historically have not been reimbursed by the program and that other drugs that have remained within the formulary can substitute for those that have been eliminated. William A. White, who directs the development of policies regarding drugs and medical supplies for the Department of Health Services, after explaining the process of decision on which drugs would be restricted or eliminated, concluded: "I believe that the carefully considered reductions in drug coverage proposed by the Department can be effected with no significant impact on the health of Medi-Cal beneficiaries." Admitting that "the choices were very difficult," Allen Fung, a pharmacist who is senior consulting pharmacist for the Medi-Cal benefits branch of the California Department of Health Services in Sacramento, described the process of carrying out the legislative mandate to cut back on Medi-Cal drug provisions. His declaration explains the reasons for eliminating various categories of drugs and for putting others in the category requiring prior authorization. He concluded that the "cutbacks as described are, in my opinion, the least detrimental to both groups [Medi-Cal beneficiaries, and pharmacists and doctors] that could be devised, consistent with the cost savings mandated by the Legislature."

Other declarations provided by respondents corroborate the careful planning by the Department of Health in making the necessary decisions and in refuting appellants' position that the TAR's would be virtually unobtainable.

### CONTENTIONS ON APPEAL

Appellants make the following contentions challenging the validity of the Medi-Cal cutbacks:

1. The court erred in dissolving the preliminary injunction since no new facts or law were presented that refuted the court's original findings.

2. The trial court erred in failing to maintain a preliminary injunction in effect since the subject regulation violates the "sufficiency" requirement of 42 Code of Federal Regulations section 440.230(b) (1983).

3. The subject regulation violates the "simplicity of administration" and "best interest of the patient" requirements of 42 United States Code section 1396a(a)(19).

4. The subject regulation limits a physician in the exercise of medical judgment, which is inconsistent with the intent of the federal law.

5. The regulation implementing the new drug formulary violates title XIX of the Social Security Act's mandate of equality and therefore is invalid.

6. The subject regulation arbitrarily denies the amount, duration, or scope of medical services to Medi-Cal recipients because of diagnosis, type of illness, or condition, in violation of federal law.

7. The subject regulation deprives Medi-Cal patients of the rights secured to them by 42 United States Code section 1396a(a)(19), in violation of the equal protection clause of the Fourteenth Amendment.

8. The subject regulation denies Medi-Cal patients their constitutional right to an evidentiary hearing prior to termination of their medical benefits in violation of the Fifth and Fourteenth Amendments to the federal Constitution.

9. The subject regulation is void and contrary to the law in that it discriminates against eligible Medi-Cal recipients based purely on their economic disability.

10. Section 53(2) of AB 799 conferred upon the Director of Health Services an unconstitutional delegation of power.

11. The subject regulation is an unconstitutional restraint on those Medi-Cal patients exercising their fundamental rights guaranteed by the California Constitution.

A brief filed as amicus curiae[7] in support of appellants contends that the trial court abused its discretion in denying appellants' motion to modify the preliminary injunction. Amicus argues that appellants were likely to prevail on the merits in that (1) failure to consult the State Medical Advisory Committee as required by federal law requires invalidation of the drug formulary changes; (2) federal law prohibits drug formulary reductions based on types of illness, as opposed to medical necessity; and (3) the prior approval system for certain pharmacy categories lacks the standards required by federal law.

Respondents contend that the appropriate test is whether the trial court abused its discretion in denying appellants' motion for modification of the preliminary injunction. They contend that the trial court did not abuse its

---

[7]The court is grateful for the work done by the National Health Law Program, Inc., and the Legal Aid Foundation of Los Angeles in preparing the brief as amicus curiae at the request of this division.

discretion in denying the motion, since appellants did not show below that they were likely to prevail on the merits of this action at trial, nor did they establish that any irreparable harm that they might suffer outweighed the irreparable harm that the department and the general public might suffer if its motion to modify the preliminary injunction were to be granted. Respondents refute each of the contentions made by appellants challenging the constitutional and statutory validity of the Medi-Cal cutbacks.

## DISCUSSION

### Scope of Review

As our Supreme Court stated in *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889]: " 'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' [Citations.] The general purpose of such an injunction is the preservation of the status quo until a final determination of the merits of the action. [Citations.] Thus, the court examines all of the material before it in order to consider 'whether a greater injury will result to the defendant from granting the injunction than to the plaintiff from refusing it; . . .' [Citations.] In making that determination the court will consider the probability of the plaintiff's ultimately prevailing in the case and, it has been said, will deny a preliminary injunction unless there is a reasonable probability that plaintiff will be successful in the assertion of his rights. [Citations.] As was said in *Family Record Plan, Inc.* v. *Mitchell* (1959) 172 Cal.App.2d 235, 242 [342 P.2d 10], 'In the last analysis the trial court must determine which party is the more likely to be injured by the exercise of its discretion [citation] and it must then be exercised in favor of that party [citation].' "

" 'The authorities are numerous and uniform to the effect that the granting or denial of a preliminary injunction on a verified complaint, together with oral testimony or affidavits, even though the evidence with respect to the absolute right therefor may be conflicting, rests in the sound discretion of the trial court, and that the order may not be interfered with on appeal, except for an abuse of discretion.' [Citation.]" (*Id.*, at p. 527.) (See also *Weingand* v. *Atlantic Sav. & Loan Assn.* (1970) 1 Cal.3d 806, 820 [83 Cal.Rptr. 650, 464 P.2d 106].)

### 1. *The Preliminary Injunction Dissolved by Its Own Terms; Appellants Did Not Demonstrate a Change in the Controlling Facts*

Appellants contend that the trial court erred in dissolving the preliminary injunction since no new facts or law were presented that refuted the court's

original findings. ▮ It is true that "when it is shown that ' "there has been a change in the controlling facts upon which the injunction rested, or *the law has been changed, modified or extended,* or where . . . the ends of justice would be served by modification," ' the trial court has the inherent power to modify or vacate the injunction [citations]." (Italics in original.) (*M Restaurants, Inc.* v. *San Francisco Local Joint Exec. Bd. Culinary etc. Union* (1981) 124 Cal.App.3d 666, 674 [177 Cal.Rptr. 690].)

Respondents did not ask for the injunction to be dissolved. Rather, the injunction itself ordered that respondents be restrained "pending the completion of public hearings . . . ." The court permitted a further extension past the public hearings held on November 18 and 19, so that the department could evaluate the comments made at the public hearings. It is appellants and not respondents who had the burden to show a further change in circumstances in order to justify modification of the terms of the preliminary injunction. We have reviewed appellants' memorandum of points and authorities in support of the modification of preliminary injunction; appellants did not meet their burden of demonstrating a change of circumstances.

2. *The Trial Court Abused Its Discretion in Denying Appellants' Motion for Modification of the Preliminary Injunction*

Respondents contend that appellants showed neither that they were likely to prevail on the merits of the action at trial nor that any irreparable harm they might suffer outweighed the irreparable harm that the Department and the general public might suffer if appellants' motion to modify the preliminary injunction were to be granted. We find the second point to be without merit. Assuming arguendo that appellant Medi-Cal recipients were illegally denied drugs that were medically necessary, we believe appellants did establish that their irreparable harm outweighed any irreparable harm to the Department and the general public in denying the motion to modify and extend the effect of the preliminary injunction. Therefore, we need only discuss whether appellants demonstrated they were likely to prevail on the merits at trial.[8]

3. *Appellants Demonstrated That They Are Likely to Prevail on the Merits at Trial*

We are assuming for the purpose of this discussion that the trial court believed the declarations presented by respondents. Although a trial with

---

[8]As the court noted in *Bass* v. *Richardson, supra,* 338 F.Supp. at page 489, "[t]he State cannot prevail on the balance of incredible human suffering which the amendments to this program would create. The injury to those whose health is maintained on the slenderest chemical balance provided through medication is not merely irreparable; *it is ultimate.*"

Respondents have informed us that Medi-Cal recipients have already prevailed after trial in *Cowan* v. *Meyers,* now on appeal in the Third Appellate District (3d Civ. 22987). That case involves, inter alia, an attack on the prior authorization scheme.

testimony by live witnesses might well present a different result, as it did in *Cowan* v. *Meyers* (see fn. 8), we will accept on this appeal that substantial evidence supports findings that respondents diligently attempted to reduce coverage in areas of least detriment to Medi-Cal recipients; that the TAR process is not unduly time-consuming, producing intentional delays that inhibit requests; and that prior authorizations have not been made essentially unavailable because of the way the TAR program is administered.

 Our inquiry does not end with those findings. The program must still comply with the statutes and constitutional law that govern Medicaid and administrative procedures. In our view, as discussed below, the prior approval system and the general cutback do not comply with the relevant guidelines. Therefore, appellants are "likely to prevail" at trial; and the preliminary injunction should have been expanded in scope and entended in time.

Several of appellants' contentions on appeal are based in the federal statutes and regulations that govern Medicaid programs.

 Title 42 Code of Federal Regulations section 440.230(b) requires that medical services provided under the Medi-Cal program be "sufficient in amount, duration and scope to reasonably achieve its purpose."[9] Subsection (c) of 440.230 provides in part that the Medicaid agency may not "arbitrarily deny or reduce the amount, duration, or scope of a required service . . . to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition." 42 United States Code section 1396a(a)(19) requires state Medicaid plans to "provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients; . . ." 42 United States Code section 1396a(a)(10)(B)(i) provides the medical assistance made available to any individual described in clause (a)(i) shall "not be less in amount, duration, or scope than the medical assistance made available to any other such individual, . . ." Finally, appellants rely on case law stating the purpose of the federal law is, in part, to allow a physician to decide upon medically necessary treatment, including drugs. (*Rush* v. *Parham* (N.D.Ga. 1977) 440 F.Supp. 383, 389.)

---

[9]There is divergence in the cases as to whether the provisions of 42 Code of Federal Regulations section 440.230 apply to optional as well as mandatory medical services. (See *Ledet* v. *Fischer* (M.D.La. 1982) 548 F.Supp. 775, 786, which states it does not apply to optional services; and compare *White* v. *Beal, supra,* 555 F.2d 1146 and *Simpson* v. *Wilson, supra,* 480 F.Supp. 97.) We accept the view that once a state decides to provide an optional service, the provisions of 42 Code of Federal Regulation section 440.230 apply. The chief beneficiary of the system is the patient (*Margulis* v. *Myers* (1981) 122 Cal.App.3d 335, 343 [175 Cal.Rptr. 787]), and the patient's interest should be protected.

In establishing the program in California, the Legislature in section 14000 of the Welfare and Institutions Code provided that its intent was "to provide, to the extent practicable . . . for health care for those aged and other persons, including family members who lack sufficient annual income to meet the costs of health care, and whose other assets are so limited that their application toward the costs of such care would jeopardize the person or family's future minimum self-maintenance and security." The Legislature added that "[i]t is intended that whenever possible and feasible: [¶] (a) The means employed shall be such as to allow, to the extent practicable, eligible persons to secure health care in the same manner employed by the public generally, and without discrimination or segregation based purely on their economic disability."

Despite the above language supporting the generous intent of the Medicaid system, the government's provision of health services is not without limit. Subdivision (d) of 42 Code of Federal Regulations section 440.230 provides: "The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." A prior authorization system is one of the accepted "utilization control procedures" that can be employed as a limitation on the service provided to medical recipients.

Nevertheless, "a state's discretion in administering its Medicaid program does not shelter it from judicial action on those occasions where it has transgressed the strictures of the Social Security Act." (*Smith* v. *Miller* (7th Cir. 1981) 665 F.2d 172, 178.) In *Smith* v. *Miller,* the appellate court affirmed the district court in enjoining the Department of Public Aid in Illinois from failing to process applications for Medicaid within stipulated time limits and in ordering that, if they were not timely processed, such applications would be automatically approved. The court observed "[w]hile a state's participation in the Medicaid program is purely voluntary and its acceptance of substantial federal funds uncoerced, once electing to participate, it must fully comply with federal statutes and regulations in its administration of the program. [Citations.]" (*Id.,* at p. 175.)

Similarly, in *Dodson* v. *Parham* (N.D.Ga. 1977) 427 F.Supp. 97, a case involving reductions in pharmaceuticals to Medicaid patients, the court granted injunctive relief to Medicaid recipients and held that the cutbacks in the Georgia Medicaid program, taken together with a prior approval system that the court considered ineffective, is "medically unsound." (*Id.,* at p. 108.)

One of the elements of the prior approval system found inadequate by the United States District Court in Georgia was that a doctor of pharmacy rather than a physician made the decision in reviewing the prior approval. The

court found it "unrealistic for defendants to presume that a doctor of pharmacy is capable of making that type of informed judgment which is necessary to ultimately review any request for prior approval for a drug which the requesting physician in his experience has found to be medically necessary and indicated for a patient with whom he is intimately familiar. . . . [T]he decision must further reflect the practical experience only possessed by one who is skilled in the medical field and perhaps even in certain specialties." (*Id.*, at p. 108.) ■ We find this logic persuasive and agree with amicus curiae that this flaw in the prior approval system invalidates the prior authorization procedures used by respondents herein.

Another flaw in respondents' prior authorization system involves the lack of a hearing prior to denial of the TAR's. We do not agree with appellants that they were entitled to an evidentiary hearing prior to termination of any benefits. As stated in Welfare and Institutions Code section 10950, "*[n]otwithstanding any other provision of this code, there is no right to a state hearing when either (1) state or federal law requires automatic grant adjustments for classes of recipients unless the reason for an individual request is incorrect grant computation, or (2) the sole issue is a federal or state law requiring an automatic change in services or medical assistance which adversely affects some or all recipients.*" (Italics in original.) ■ The initial cutback is indeed an across-the-board reduction in benefits mandated by state law and is not an individual denial thereof. Regarding the general cutback, therefore, while recognizing that health care is as important a benefit as other welfare issues (*Memorial Hospital* v. *Maricopa County* (1974) 415 U.S. 250 [39 L.Ed.2d 306, 94 S.Ct. 1076]), we do not believe that an evidentiary hearing prior to termination was mandatory under *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011], for those affected by only the across-the-board reduction.

■ We do, however, find that such hearing is necessary for those whose prior authorizations are denied after a TAR has been submitted. Such denials are based on individual factual grounds, not generalized criteria; and the person seeking medical assistance should be entitled to a hearing.

■ As stated in *King* v. *Woods* (1983) 144 Cal.App.3d 571, 576 [192 Cal.Rptr. 724], "Welfare applicants and recipients are entitled to a prompt, fair hearing prior to the denial, termination or reduction of benefits. [Citations.]" The beneficiary of the entitlement is the person with a right to a prior hearing. (See *Paramount Convalescent Center, Inc.* v. *Department of Health Care Services* (1975) 15 Cal.3d 489, 497 [125 Cal.Rptr. 265, 542 P.2d 1], where our Supreme Court denied a pretermination hearing to a Medi-Cal provider and, in dicta, observed that the primary beneficiary is

the person the cases have recognized has a right to a hearing; in accord, *Margulis* v. *Myers, supra,* 122 Cal.App.3d 335.)

Medi-Cal recipients were entitled to the named drugs before enactment of Assembly Bill No. 799. Now they can obtain these same drugs only with prior authorization. Their predicament is at least as serious as those whose unemployment insurance benefits were terminated in *American Federation of Labor* v. *Employment Dev. Dept.* (1979) 88 Cal.App.3d 811, 821 [152 Cal.Rptr. 193]; Division Five of this court held that those workers were entitled to a hearing. If the Department of Health intends to deny the TAR, the Medi-Cal recipient should be entitled to a predenial hearing.

Without the prior authorization procedures, many drugs that even respondents would consider "medically necessary" under the stricter present standards would be unavailable to those who need it. If the prior authorization procedure fails, the system would not be providing the assistance mandatory under the Social Security Act and must be enjoined.

Furthermore, even without flaws in the prior authorization procedures, federal regulations permit discrimination based on degree of medical necessity but not on the medical disorder for which the person suffers. (*White* v. *Beal, supra,* 555 F.2d at p. 1152.)[10] The Medi-Cal system, as limited by Assembly Bill No. 799 and its regulations, does not comply with this requirement.

We do not doubt the good faith effort of the respondents to formulate a system that would be the least detrimental to Medical recipients. However, by making certain drugs totally unavailable, they ignored the necessity that some patients have for drugs that might be merely palliative for others. Infants and elderly people, for example, often suffer greatly from conditions that might be very minor in the rest of the population. Such decisions must most often be made on a patient-by-patient basis. Respondents have attempted to delete or require prior approval for drugs that often provide only minor relief of less serious conditions; their general rational basis, however, does not help the Medi-Cal recipient who, because of "medical necessity,"[11] requires the deleted medication.

The legal flaws in the current system compel a finding that appellants are likely to prevail at trial. The preliminary injunction must be expanded to

---

[10]In *White* v. *Beal, supra,* the court affirmed disallowance of Pennsylvania's classification limiting expenditures for eyeglasses when needed for other than eye disease or pathology problems.

[11]We do not address the validity of the change in the standard of medical necessity since it is unnecessary to do in light of our resolution of the issues before us.

include the prior approval system and must be extended in time.[12] Because of our resolution of these issues, it is unnecessary to address the other contentions raised by the parties.

The orders of the trial court are reversed. The case is remanded for further proceedings consistent with the views expressed herein.

Danielson, J., concurred.

Klein, P. J., concurred in the judgment.

Respondents' petition for a hearing by the Supreme Court was denied February 14, 1985. Broussard, J., and Lucas, J., were of the opinion that the petition should be granted.

---

[12]At trial or before, respondents may be able to demonstrate that the procedures have changed to comply with the requirements stated above. On the other hand, appellants may be able to demonstrate that factually the procedures are far more egregious than they appeared to the court below.