Linda LADD, John Kowalski, and Linda LaPlante, individually and on behalf of all persons similarly situated

v.

Joyce A. THOMAS, in her capacity as Commissioner of the State of Connecticut Department of Social Services.

No. 3:94cv1184 (JBA).

United States District Court, D. Connecticut.

Jan. 9, 1997.

Shelley A. White, Sheldon V. Toubman, New Haven Legal Assistance, New Haven, for plaintiff Linda Ladd and intervenors-plaintiffs Linda LaPlante and John Kowalski.

Richard J. Lynch, Judith A. Merrill, Attorney General's Office, Health & Human Services, Hartford, for defendant Audrey Rowe.

### Ruling on the Parties' Cross–Motions for Summary Judgment (Docs. 27 & 32)

ARTERTON, District Judge.

## I.  Introduction

Plaintiffs Linda Ladd, John Kowalski, and Linda LaPlante are Medicaid recipients who have brought suit against the defendant Joyce A. Thomas,[1] in her capacity as Commissioner of the Connecticut State Department of Social Services (DSS) for alleged violations of federal Medicaid law in connection with the processing of requests for prior authorization of durable medical equipment (DME).  In particular, the plaintiffs argue that the defendant's policies violate federal statutory and constitutional law because they (1) fail to provide notice to Medicaid recipients of decisions on their requests for prior authorization for DME, (2) fail to provide notice to Medicaid recipients of the opportunity for a hearing to challenge these decisions and of the procedure for requesting

such a hearing, and (3) fail to allow Medicaid recipients to apply directly to DSS for prior authorization of DME.

Among the relief requested, plaintiffs seek a declaratory judgment, in accordance with 28 U.S.C. §§ 2201–02, declaring that it is unlawful for the defendant:

(1) to refuse to allow Medicaid recipients, with their treating physicians, to make requests directly to DSS for prior authorization for DME, without going through a supplier of DME;

(2) to fail to provide notice to Medicaid recipients of all of her decisions on requests for prior authorization for DME;

(3) to fail to provide notice to Medicaid recipients of their right to a fair hearing to challenge all adverse decisions on requests for prior authorization for DME.

Plaintiff has filed motions for class certification and summary judgment.  On September 30, 1996, the Court granted certification of a class "consisting of all current and future Medicaid recipients residing in Connecticut who currently need, who have in the past needed, or who in the future will need to request prior authorization for DME."

Defendant has filed a cross-motion for summary judgment arguing that the defendant's policies for prior authorization of DME comply with federal law.  For the reasons stated below, the Court grants in part and denies in part plaintiffs' motion, and grants in part and denies in part defendant's motion.

## II.  Facts

The facts in this case were summarized in the Court's Ruling on Plaintiffs' Motion for Class Certification (Doc. 15), and will only be briefly recapitulated herein.

The Connecticut Department of Social Services ("DSS") participates in a joint state and federal medical assistance program for certain categories of low-income individuals, under Title XIX of the Social Security Act § 1396, *et seq.*, also known as "Medicaid."

---

1.  Joyce A. Thomas has replaced Audrey Rowe as Commissioner of DSS since the initiation of this lawsuit.

Under the Medicaid program, DSS pays for a wide variety of medical services for persons who are financially and categorically eligible for these services. One such category of Medicaid-eligible individuals is adults with severe disabilities who are unable to work due to a medical condition or combination of conditions. 42 U.S.C. § 1396d(a).

Federal law mandates that participating states provide home health services including durable medical equipment (DME) to Medicaid participants where such equipment is medically necessary. 42 C.F.R. § 440.70(b)(3). Under state Medicaid regulations, prior authorization for DME is required for all rentals regardless of cost, all replacement equipment and repairs, and any purchase item costing in excess of $100. Connecticut Medical Assistance Provider Manual ("Conn. MAP Manual"), § 189.F.II.a. In order to obtain prior authorization, Form W–619, "Authorization Request for Medical/Surgical Supplies," must be completed and signed by the prescribing physician and a medical equipment supplier and submitted to the Department of Income Maintenance for review. Conn. MAP Manual, § 189.-F.III.a; Conn. State. Agencies § 17–2–80. Although the defendant's regulations do not explicitly prohibit Medicaid recipients from requesting prior authorization of DME, the defendant only accepts them from vendors in practice. Further, the defendant's regulations allow providers to make verbal requests for authorization over the telephone during normal working hours for DME that is "immediately necessary and vital to the health and safety of the recipient." Conn. MAP Manual, § 189.F.III.b. If a verbal request is approved by DSS, a completed Form W–619 must be submitted within two working days noting that verbal approval had been given and by whom. Conn. MAP Manual § 189.-F.III.c; Conn. State Agencies § 17–2–81.

The parties do not dispute that DSS gives notice of denial of written requests for prior approval for payment for DME to Medicaid recipients. It is also undisputed that DSS does not provide notice, including notice of their appeal rights, directly to Medicaid recipients in several types of situations:

1. when a written request for prior authorization submitted to DSS results in a request for more information (a "pink slip") to the vendor indicating that the request cannot be approved in the absence of certain information;

2. when a vendor who has been sent a "pink slip" takes no action on it to supply the missing information;

3. when DSS advises the vendor that a request will only be approved if modified from the form in which the vendor requested it;

4. when DSS grants approval of a request for a prior authorization in a form at variance with physician's basic prescription submitted with the request prepared by the vendor;

5. when DSS approves a period of rental for DME that is shorter than the period requested;

6. when a request for prior authorization is granted in full, even if the equipment at issue is custom equipment which will take several weeks to fabricate and deliver.

(Pls.' Statement of Material Facts, ¶¶ 29(a)-(f).)

## III. Cross–Motions for Summary Judgment

### A. Legal Standard on Motion for Summary Judgment

A grant of a summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A disputed fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party must initially demonstrate that there are no material facts in dispute and "[a]ll reasonable inferences and any ambiguities are drawn in favor of the

non-moving party." *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Once the moving party has met its burden, "the non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Goenaga v. March of Dimes Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995); *Celotex Corp. v. Catrett,* 477 U.S. 317, 332, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986).

## B. Federal Statutory and Regulatory Requirements

As a participating state in the Medicaid program, Connecticut must ensure that its medical assistance plan complies with federal Medicaid law. *Wilder v. Virginia Hospital Ass'n,* 496 U.S. 498, 501, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990); *Bethphage Lutheran Service, Inc. v. Weicker,* 965 F.2d 1239, 1240 (2d Cir.1992); *Caldwell v. Blum,* 621 F.2d 491, 494 (2d Cir.1980). The Fourteenth Amendment prohibits states from depriving a person of life, liberty, or property without due process of law. The plaintiffs have a protectable "property interest" in their Medicaid benefits under the Fourteenth Amendment. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Because of this protectable interest, before a recipient's public assistance benefits can be terminated, the state must provide the recipient with

> timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.

*Id.* at 267–268, 90 S.Ct. at 1020. *See also Catanzano by Catanzano v. Dowling,* 60 F.3d 113, 116 (2d Cir.1995).

In compliance with the dictates of *Goldberg,* federal Medicaid law requires state Medicaid agencies to provide notice and "the opportunity for a fair hearing to any individual whose claim for medical assistance is denied or not acted upon with reasonable promptness." 42 U.S.C. § 1396a (a)(3). The implementing regulations require state Medicaid agencies to "inform every applicant or recipient in writing ... of his right to a hearing ... at the time of any action affecting his or her claim." 42 C.F.R. §§ 431.206(b) & (c)(2). *See also* 42 C.F.R. § 431.220(a)(1)-(2) (requiring that state Medicaid agencies "grant[ ] an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied"). The term "action" is defined as "a termination, suspension, or reduction of Medicaid eligibility or covered services." 42 C.F.R. § 431.201. Under federal law, notice means "a written statement that meets the requirements of § 431.210." 42 C.F.R. § 431.205(d). Section 431.210 requires:

> (a) statement of what action the State intends to take;
>
> (b) the reasons for the intended action;
>
> (c) the specific regulation or law that supports the change;
>
> (d) an explanation of the right to a hearing;
>
> (e) an explanation of the circumstances under which Medicaid is continued pending hearing.

Plaintiffs maintain that *Goldberg* and the Medicaid Act entitle Medicaid recipients to notice of the opportunity to be heard, not just when their written requests for prior approval of DME are denied outright, "but *whenever* the state takes any type of adverse action on their requests for prior approval." (Pls.' Mem. in Support of Summ. J., at 27.) Plaintiffs maintain that defendant is required to provide notice whenever a "pink slip" is issued, a request for DME is approved but in a modified form, or an oral request for DME is denied (usually by telephone).

The defendant does not dispute that she must provide notice to Medicaid recipients when she denies a written request for prior approval of DME; however, she maintains that due process notice is not required under the three other scenarios demanded by the plaintiffs.

## C. No Requirement to Provide Notice Upon Issuance of a "Pink Slip"

The Court will first address whether the statutory notice requirements are trig-

gered when the defendant sends a vendor of DME a "pink slip" requesting that additional information be provided in response to a request for prior approval of DME. There are a variety of reasons why a "pink slip" may be sent to a vendor, including an incomplete physician's prescription.[2]

Under federal law, notice need only be sent when the defendant "acts" on a request for DME. Thus, the question is whether the issuance of a "pink slip" constitutes action. The defendant argues that due process notice requirements are not activated unless a properly-documented written request is made:

> [I]n determining whether to allow prior authorization for payment for durable medical equipment, the DSS is not making the determination of whether a specific Medicaid recipient is eligible for a covered service. Instead it is determining whether a vendor of medical equipment has properly documented a claim for payment such that the claim is appropriate for payment. The Medicaid recipient has the right to free choice of providers. Therefore, a recipient who is dissatisfied with the service being given by one provider may go to another.

(Def.'s Mem. in Opp., at 9.)

Recently, the Second Circuit reviewed the question of what constitutes "action" in *Granato v. Bane,* 74 F.3d 406, 412 (2d Cir.1996). In *Granato,* a Medicaid recipient's home care services were terminated, without notice to her, upon her admission to the hospital. The plaintiff brought suit against the state and county Departments of Social Services alleging violation of due process rights and rights under Medicaid regulations. Under federal and New York state law, a Medicaid recipient may not receive home health services during a period of hospitalization. DSS treated the statutorily required discontinuation of benefits as an automatic termination and treated subsequent requests for resumption of services as a new application.

The Second Circuit found that termination, as opposed to suspension, of these services constituted agency "action" under federal Medicaid regulations, triggering the notice requirement. *Id.* at 412. "The fact that home care services are unavailable during the period of hospitalization does not obviate the requirement that the DSS notify the recipient in a timely and adequate manner that those services are being terminated, if that is what the agency decides to do." *Id.*

■ In the instant case, this Court views the vendor's submission of Form W–619 as triggering the defendant's statutory due process obligations to the recipient because while the defendant considers this request, the services are "unavailable" to the Medicaid recipient. Federal law requires that after the form for preauthorization for DME is submitted, the defendant must either deny or act upon the request with "reasonable promptness." 42 U.S.C. § 1396a(a)(3). The issuance of the pink slip may be considered merely an interim step taken before the defendant determines whether to grant or deny the request, and, thus, does not trigger the notice requirement under the Medicaid Act. However, the issuance of a "pink slip" does not relieve the defendant of its obligation to act thereafter with reasonable promptness. If the defendant does not act with reasonable promptness, notice must be sent to the recipient explaining why his or her request has not been processed and informing him or her of the right to a fair hearing. The failure of a vendor to resubmit a request with the information requested on the "pink slip" does not obviate the defendant's obligation to inform the recipient with reasonable promptness that his or her request has not been acted upon.

■ Neither the Medicaid Act nor state regulations define what is meant to act with "reasonable promptness." 42 U.S.C. § 1396a(a). Where the state agency fails to promulgate regulations establishing an express time for responding to requests for prior approval, as the defendant has failed to do, "courts are uniquely suited to determining what is reasonable" under the Medicaid

---

**2.** For example, defendant maintains that plaintiff Ladd's prescription stated "one wheelchair," but did not include a diagnosis, statement of medical need for the equipment, length of time for which the equipment was needed, and a prognosis. (Def.'s Mem. in Opp., at 7.)

Act. *Cornelius v. Minter*, 395 F.Supp. 616, 621 (D.Mass.1974). Courts have approved decrees or imposed time limits for the processing of prior authorization requests for Medicaid-covered services, and for notice to recipients if no action is taken within the prescribed period of time. *See Kessler v. Blum*, 591 F.Supp. 1013 (S.D.N.Y.1984) (imposing 21 day time limit); *McMahon v. Minter*, No. 3251 (Sup.Ct.Mass., Feb. 24, 1975) (approving decree establishing 15–day limit).

At this point of the litigation, the Court has before it evidence that the three named plaintiffs have never received notice from the defendant or have received what appears to be "untimely" notice, by way of their vendor, of the defendant's denial of their request for services. Now that the Court has granted plaintiffs' motion to certify class, plaintiffs will have the opportunity to conduct discovery and systematically determine the defendant's average response time to requests for DME made by vendors.[3] Absent any agreement by the parties establishing a time limit, the Court will determine at the appropriate time what constitutes "reasonable promptness" by balancing the recipients' interest with the state's. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.").

### D. Notice Requirements when a Request for DME is Approved in a Modified Form

Next, plaintiff argues that whenever the defendant modifies, yet approves, a request

for DME, notice is required to be sent to the recipient informing him or her of the modification and his or her right to contest the modification. Among the circumstances in which no notice is currently sent to a recipient are:

1. when DSS advises the vendor that a request will only be approved if modified from the form in which the vendor requested it;

2. when DSS grants approval of a request for a prior authorization in a form consistent with the physician's basic prescription, but significantly at variance with the form in which it was actually submitted in the detailed original request prepared by the vendor;[4] and

3. when DSS approves a period of rental for DME that is shorter than the period of time requested.

Plaintiffs argue that any modification to an original request made by a vendor on a recipient's behalf constitutes "action," and thus triggers the notice requirements under the Medicaid Act. In response, defendant maintains that a modification of a requested piece of DME is not a denial of services and, thus, defendant is not required to send notice of this modification under federal Medicaid regulations and the dictates of *Goldberg* and *Mathews*.

▌ Because Medicaid benefits are a protectable property right, federal law requires:

that a State plan provides an opportunity for a fair hearing to any person whose claim for assistance is denied or not acted

---

**3.** In *Clark v. Kizer*, 758 F.Supp. 572 (E.D.Cal. 1990), *rev'd in part on other grounds*, 967 F.2d 585 (9th Cir.1992), Medicaid recipients claimed that the state welfare agency's regulations forbidding recipients from freely choosing dentists, and requiring them to request dental service through a telephone referral service, violated their rights to have dental care to be provided "with reasonable promptness." 758 F.Supp. at 580. The Court found that:

[t]he undisputed declarations of several county public health officials demonstrate that class members frequently experience delays in obtaining appointments for regular and emergency dental care with those providers participating in the Denti–Cal program.

*Id.*

This Court declines to make a determination on the time limits imposed on the state until a similar type of proffer and DSS response is made to the Court.

**4.** For example, if a doctor simply prescribes "a wheelchair," and the vendor submits a request for a "wheelchair" with certain features, the defendant may approve the request for a wheelchair without the features included in the vendor's request. In such cases, no notice is sent to the recipient informing him or her that the request was not approved in the exact form submitted by the vendor.

upon promptly. This subpart also provides for an opportunity for hearing if the Medicaid agency takes action to suspend, terminate, or *reduce* services . . .

42 C.F.R. § 431.200 (emphasis added). *See also* 42 C.F.R. § 431.201 (definition of "action" includes "reduction of Medicaid eligibility or covered services . . ."). Under federal law, plaintiffs have a statutory right to notice and the opportunity to a hearing whenever the defendant either denies or reduces a request for prior authorization of durable medical equipment. If a request for DME is modified so that the substituted item or items would be considered a reduction of what the recipient requested, then written notice must be provided to the recipient. *See Perry v. Chen*, 1996 WL 159808, at *7 (D.Ariz., 1996) ("Clearly these federal notice regulations envision *written* notice and hearing if requested when the amount or type of services are reduced."); *Kessler*, 591 F.Supp. at 1030 ("Under certain circumstances a modification could be considered a termination or denial of benefits").

Defendant maintains that if such notice is required, notice only needs to be sent to the vendor or the physician, and not to the recipient. The defendant explains that "home health services are provided not based on recipient request or expectation but on a physician's written plan of care . . . The physician drives the provision of the benefit not the recipient." [5] (Def.'s Mem. in Opp., at 14.)

The Court rejects defendant's contention that the physician, not the recipient, is the

intended beneficiary of these Medicaid regulations. Federal Medicaid law clearly gives the recipient the right to notice and a hearing because it is the recipient who has the "property right," the right to a covered Medicaid service. *See* 42 U.S.C. § 1396a(a)(3). The defendant's position was most recently rejected in *Catanzano by Catanzano v. Dowling*, 847 F.Supp. 1070 (W.D.N.Y.1994), *aff'd*, 60 F.3d 113 (2d Cir.1995). In *Catanzano*, the State of New York began terminating Medicaid recipients' receipt of home health care services, as part of a newly-imposed cost-effectiveness test for Medicaid-funded services. Although the state provided notice to terminated Medicaid recipients when the home health agency and the state Medicaid agency disagreed on the cost-effectiveness of the service, no notice was provided to terminated Medicaid recipients where the home health agency and the state Medicaid agency agreed that the home health services were not cost-effective. 847 F.Supp. at 1083.

The District Court held that notice was required to be provided to the Medicaid recipient

> due to the Social Services districts' apparent abrogation of their responsibility, a [home health care agency] could unilaterally reduce home health care services without affording the patient any notification or any hearing. This practice contravenes the clear directive of federal law and basic due process rights delineated in *Goldberg v. Kelly*.

---

**5.** In support of their argument, the defendant relies on *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), in which the Supreme Court held that nursing home residents had no constitutional right to notice and a hearing to contest the state Medicaid agency's decision to decertify their nursing home. *O'Bannon* is distinguishable from this case because the nursing home, not the recipient was the entity to which the agency's adverse action was addressed. At no time were the residents' eligibility for nursing home services affected. *See Haymons v. Williams*, 795 F.Supp. 1511, 1522 (M.D.Fla.1992) (distinguishing *O'Bannon* because residents at all times remained eligible to receive their services, "albeit in a different nursing home"). Here, the defendant's disqualification or modification of the vendor's request on plaintiff's behalf is, in effect, a determination that the plaintiffs are not eligible

for the items requested in the written preauthorization form. Thus, while the plaintiffs in *O'Bannon* continued to remain eligible for the services they had been receiving, the Medicaid recipients in this case may be being deemed, in effect, ineligible for the DME services they sought.

Defendant also cites *Banks v. Sect'y of Indiana Family and Social Services Admin.*, 997 F.2d 231 (7th Cir.1993), in which the court found that the state Medicaid agency was not required to provide notice to providers when their claims for reimbursements were denied. *Id.* at 243. *Banks* is also distinguishable from the instant case. In *Banks*, the Medicaid recipient had already received the services and the provider was statutorily prohibited from seeking payment from the recipient. Thus, the issue before the *Banks* court was whether the provider was entitled to reimbursement, not whether the plaintiff was eligible to receive the services, the issue in this case.

*Id.* at 1084. *See Haymons v. Williams,* 795 F.Supp. 1511 (M.D.Fla.1992) (Florida Medicaid agency's provision of notice to home care providers of termination of home care services, and not to Medicaid recipients, is violative of due process and the Medicaid Act); *McDole v. Reagen,* Civ. No. 81–334–B (S.D.Iowa, Dec. 30, 1981) (denials of request for DME must sent to recipients not just vendors).

■ Thus, for the reasons stated above, this Court finds that whenever the defendant's approval of a written prior authorization request is predicated on a modification of the request which has the effect of reducing what the recipient has requested, the plaintiffs are statutorily entitled to notice that this reduction has been made and notice of the right to appeal the decision to reduce the request.

### E. Defendant is Required to Provide Notice for Denials of Oral Requests for Prior Approval of DME

■ Next, plaintiffs argue that DSS is required under federal Medicaid law to provide notice of any "action" taken in response to oral requests for prior approval of DME made by a vendor on behalf of Medicaid recipients. Defendant argues, in opposition, that it is not required to give notice of denial of services to Medicaid recipients as a result of a vendor's failure to submit a written request for prior authorization for payment in non-emergency situations, as mandated in DSS regulations. Conn. MAP Manual, § 189.F.III.a; Conn. State. Agencies § 17–2–80.

Under the defendant's Medicaid regulations, vendors may only make oral requests for DME in emergency situations, where the DME is immediately necessary and vital to the health and safety of the recipient, and the vendor must still submit a written request within two working days. *See* Conn. MAP Manual, § 189.F.III. However, use of the limited procedure for verbal DME requests provided for in the Medical Assistance Provider Manual is in practice used far more expansively than just the emergency context, according to the vendors who made requests on behalf of the named plaintiffs and a DSS

worker responsible for making determinations of prior approval for payment for DME. (Pls.' Statement of Facts, ¶ 17.)

■ The Court deems as admitted the following excerpt from plaintiffs' statement of material facts not in general dispute, since they were not opposed by the defendant:

18. If an oral request is not approved, written notice will not be sent to the vendor or the Medicaid recipient.

19. When the vendor makes only an oral request to DSS, and does not follow up with a formal written request, no written decision is provided to either the vendor or the Medicaid recipient on whose behalf the oral request was submitted.

20. One situation where no follow-up written request to an oral request is likely to be submitted is where DSS has advised the vendor orally that the requested DME is not one on DSS's fee schedule for DME, since the vendor in that case most likely will consider it futile to submit a formal request for prior authorization.

21. One of the defendant's own employees making prior authorization decisions for DME, Susan Simms, has testified that if a particular type of DME is requested that is not on the defendant's fee schedule list, the request cannot be granted regardless of medical necessity.

22. DME vendors generally will not even bother to submit requests for prior authorization of DME which is not on the defendant's fee schedule list, because they generally believe that such requests will not be granted regardless of medical necessity, and that such submissions would therefore be futile.

(Pls.' Statement of Facts, ¶¶ 18–22.)

Plaintiffs submit that the verbal denials over the telephone of vendors' requests for DME, whatever the reason, constitutes "action" on part of DSS, thus triggering the due process rights of the plaintiffs. In opposition, defendant argues that it should not be held responsible for notifying the recipients of any action it takes unless the vendor follows its prescribed procedures by submitting requests for prior approval of DME in writing.

Federal Medicaid regulations do not delineate a separate standard, in terms of due process requirements, for recipients whose request for services is made to the state Medicaid agency by telephone. Medicaid recipients are entitled to written notice of a right to a hearing at the time "any action affecting his or her claim." 42 C.F.R. § 431.206(b). If a request for DME is made by telephone by a vendor on behalf of an individual recipient, and pursuant to a physician's prescription, and this request is denied by DSS, the recipient is entitled to requisite notice of this "action" taken by DSS, whatever the agency's reasons may be. (Obviously, if the defendant followed her policy and uniformly advised vendors that all non-emergency requests had to be in writing to be considered, the notice requirement would be effectuated as in all written requests.)

### F. Notice Requirements of Favorable Actions to All Requests for Prior Approval of DME

█ The plaintiffs next argue that federal Medicaid law requires that Medicaid recipients receive notice when a request for prior approval is granted. Plaintiffs argue that recipients are entitled to notice of the right to a fair hearing if a claim for medical assistance "is not acted upon with reasonable promptness." 42 *U.S.C.* § 1396a(a)(3); *see also* 42 C.F.R. § 431.241. There is no prescribed time limit in which DSS must act on a recipient's request for services, and the uncontradicted evidence submitted shows that Medicaid recipients are at the mercy of the DME vendor to inform them that their request has been approved. Plaintiff La-Plante attests that she learned about the approval of her piece of equipment from her vendor nearly one month after DSS had informed the vendor. Plaintiffs argue that recipients should be provided notice of the favorable determinations of their requests for prior approval so that they "can know whether the delay in their receipt of DME is caused by DSS delay in making a determination, or by delay on the part of the vendor or the manufacturer." (Pls.' Mem., at 18.)

Under Medicaid regulations, Medicaid recipients are entitled to a fair hearing only "at the time of any action affecting his or her claim." 42 C.F.R. § 431.20. The definition of "action" encompasses only terminations, suspensions, or reductions of covered services, not approvals. Because "approval" of a recipient's request does not impact due process or trigger a statutory right to notice, the plaintiffs do not have a right to such notice under federal law. *See Kessler,* 591 F.Supp. at 1030 (no notice requirement when "the recipient will be receiving an approved item he/she did not previously have"). Plaintiffs' concerns regarding their inability to contest delays in the determinations of prior approval requests for DME will be addressed by subsequent proceedings related to determination of a time frame for "reasonable promptness."

### G. The Right of Recipients to Submit Prior Requests for Approval Directly

█ Finally, plaintiffs seek injunctive relief requiring that they be given the option to request prior approval of DME directly from the defendant, without going through a DME vendor. Plaintiffs argue that such relief is necessary in order for recipients to exercise their right to contest delays under 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.241, and because forcing plaintiffs to submit requests through vendors is not consistent with "simplicity of administration and with the best interests of Medicaid recipients." *See* 42 U.S.C. § 1396a(a)(4), 42 U.S.C. § 1396a(a)(19), and 42 C.F.R. §§ 431.15 and 435.930.

█ Under federal law, a Medicaid agency may "place appropriate limits on a service based on criteria such as medical necessity or utilization control." 42 C.F.R. 440.230(d). "A prior authorization system is one of the accepted utilization control procedures' that can be employed as a limitation on the service provided to medical recipients." *Jeneski v. Myers,* 163 Cal.App.3d 18, 209 Cal.Rptr. 178, 187 (2d Div.1984). Defendant argues that having all requests for prior authorization go through vendors safeguards "against unnecessary or inappropriate use of Medicaid Services and against excess payments." 42

C.F.R. § 456.3. *See also* Conn. State Agencies §§ 17–2–80, 17–2–81.

The Court concludes that requiring Medicaid recipients to submit requests for prior authorization through vendors of DME does not violate the Medicaid Act. Since the Court has determined that the defendant's obligation to send notice when claims are denied includes notice when claims have not been acted upon with reasonable promptness, it is anticipated that these procedural safeguards will be sufficient to keep class members abreast of the status of their requests for DME.

## IV. Conclusion

In conclusion, the Court GRANTS in part and DENIES in part each of the parties' motions for summary judgment (Docs. 27 & 32). Accordingly, declaratory judgment shall enter as follows:

1) defendant is in violation of federal law when she does not provide reasonably prompt notice to Medicaid beneficiaries requesting prior authorization for DME that their requests have not been acted upon;

2) defendant is in violation of federal law when she does not provide notice to beneficiaries that a request for prior authorization has been approved in modified form; and

3) defendant is in violation of federal law when she does not provide notice to beneficiaries that a request for prior authorization has been denied orally.

Counsel are ordered to appear at a status conference at 9 am on January 28, 1997 to establish a schedule for discovery and briefing with respect to the determination of what constitutes "reasonable promptness."

IT IS SO ORDERED.